1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11   NICOLE HUGHES, et al.,                    Case No. 16-cv-03371-LB

12                       Plaintiffs,
                                               **ORDER STAYING PROCEEDINGS**
13            v.
                                               Re: ECF Nos. 87, 88, 89, 91
14   S.A.W. ENTERTAINMENT, LTD, et al.,

15                       Defendants.

16

17   ELANA PERA, et al.,                       Case No. 17-cv-00138-LB

18                       Plaintiffs,
                                               **ORDER STAYING PROCEEDINGS**
19            v.
                                               Re: ECF Nos. 25, 26, 28
20   S.A.W. ENTERTAINMENT, LTD,

21                       Defendant.

22                                  **INTRODUCTION**

23        These two actions are labor disputes brought as putative collective actions under the Fair

24   Labor Standards Act (FLSA) and class actions under Federal Rule of Civil Procedure 23. The

25   named plaintiffs, who bring claims on behalf of themselves and other putative class members, are

26   or were exotic dancers who are suing the companies that managed the nightclubs where they

27   worked.

28

The parties have filed a number of motions. First, the defendants have moved to compel the plaintiffs to arbitrate their claims, citing arbitration provisions in the contracts they signed with the plaintiffs.[1] Second, the defendants move to dismiss or stay these actions on the ground that they are subsumed in another earlier-filed FLSA collective action and Rule 23 class action, *Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, also brought by former exotic dancers that worked at the same nightclubs at issue here (as well as other nightclubs).[2] The parties in that case reached a court-approved settlement agreement that would release the defendants of many of the claims at issue in these actions (the settlement, however, is currently on appeal to the Ninth Circuit[3]). Third, the plaintiffs move for conditional certification under the FLSA and move to have notice of these actions issued to all other similarly situated dancers.[4]

The issue of arbitration is a threshold issue. Each of the five named plaintiffs — Nicole Hughes, Angelynn Hermes, and Penny Nunez in the *Hughes* case and Elana Pera and Sarah Murphy in the *Pera* case — signed contracts with the defendants in which the parties agreed to resolve all disputes through arbitration instead of litigation.[5] If those provisions are enforceable and the plaintiffs' claims are therefore subject to mandatory arbitration, they cannot be litigated in this court (which would render the defendants' motions to dismiss and the plaintiffs' motions for conditional certification and notice moot).

---

[1] Defs.' *Hughes* Mot. to Compel Arbitration – No. 16-cv-03371-LB – ECF No. 87; Def.'s *Pera* Mot. to Compel Arbitration – No. 17-cv-00138-LB – ECF No. 28; *see also* Defs.' *Hughes* Mot. to Compel Arbitration re Opt-In Pl. Dora Marchand – No. 16-cv-03371-LB – ECF No. 91. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Defs.' *Hughes* Mot. to Dismiss – No. 16-cv-03371-LB – ECF No. 88; Def.'s *Pera* Mot. to Dismiss – No. 17-cv-00138-LB – ECF No. 26.

[3] No. 17-17079 (9th Cir.).

[4] Pls.' *Hughes* Supplemental Mem. in Supp. of Mot. for Conditional Certification and Issuance of Notice – No. 16-cv-03371-LB – ECF No. 89; Pls.' *Pera* Mot. for Conditional Class Certification and Issuance of Notice – No. 17-cv-00138-LB – ECF No. 25.

[5] Defs.' *Hughes* Mot. to Compel Arbitration, Bordeau Decl. Ex. 1 (Hughes/Gold Club contracts) – No. 16-cv-03371-LB – ECF No. 87-2 at 6–9; *id.* Ex. 2 (Nunez/Gold Club contracts) – No. 16-cv-03371-LB – ECF No. 87-2 at 11–19; Defs.' *Hughes* Mot. to Compel Arbitration, Fusco Decl. Ex. 1 (Hughes/SAW contracts) – No. 16-cv-03371-LB – ECF No. 87-4 at 7–14; *id.* Ex. 2 (Hermes/SAW contracts) – No. 16-cv-03371-LB – ECF No. 87-4 at 16–25; Def.'s. *Pera* Mot. to Compel Arbitration, Calcagni Decl. Ex. 1 (Pera/SAW contracts) – No. 17-cv-00138-LB – ECF No. 28-2 at 7–21; *id.* Ex. 2 (Murphy/SAW contracts) – No. 17-cv-00138-LB – ECF No. 28-2 at 23–33.

1   The parties' motions raise a timing issue, however. All of the parties agree that under a 2016

2   decision by the Ninth Circuit, *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), the

3   arbitration provisions the defendants seek to invoke are unenforceable. The defendants argue,

4   however, that the Supreme Court granted certiorari in *Morris* earlier this year, held argument on

5   October 2, and may soon issue a decision that reverses the Ninth Circuit, which would alter the

6   legal landscape concerning the enforceability of arbitration provisions like the ones at issue here.

7   The defendants therefore request that the court defer on ruling on the arbitration issue and stay

8   these proceedings until the Supreme Court issues its decision. The plaintiffs, perhaps

9   unsurprisingly, oppose this request.

10   After considering the relevant factors, the court determines that a stay of the proceedings,

11   including a deferral on the defendants' motions to compel arbitration (as well as the defendants'

12   motions to dismiss and the plaintiffs' motions for conditional certification and notice), is

13   warranted. The court therefore stays both the *Hughes* and *Pera* cases pending a decision by the

14   Supreme Court in *Morris* and a decision by the court, to follow thereafter, on the defendants'

15   motions to compel arbitration.

16

17   **ANALYSIS**

18   **1.   Staying Proceedings Pending the Supreme Court's Decision in *Morris v. Ernst & Young***

19   In *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), the Ninth Circuit held that

20   agreement provisions requiring employees to pursue legal claims against their employers only

21   through arbitration and to arbitrate only as individuals in separate proceedings, as opposed to in a

22   collective action, violate the National Labor Relations Act and are therefore unenforceable. *Id.* at

23   980.

24   Both sides here agree that *Morris* renders the arbitration provisions in these cases

25   unenforceable.[6] The defendants argue, however, that the court should defer ruling on their motions

26

27   [6] *See* Defs.' *Hughes* Mot. to Compel Arbitration – No. 16-cv-03371-LB – ECF No. 87-1 at 7 (*Morris* covers "class-action waivers — like those Defendants seek here to enforce"), 15–16 & n. 7 (arguing

28   that a motion to compel arbitration would be "futile" in light of *Morris*) (citing cases); Pls.' *Hughes* Mot. to Compel Arbitration Opp'n – No. 16-cv-03371-LB – ECF No. 19–20; Def.'s *Pera* Mot. to

United States District Court
Northern District of California

to compel arbitration and stay the proceedings here until the Supreme Court — which granted

certiorari in *Morris* and heard argument on October 2, 2017 — issues its decision, which may

reverse the Ninth Circuit.

The defendants' request for a stay has merit. When the Supreme Court first granted certiorari

in *Morris*, courts confronted with similar circumstances as the ones presented here split as to

whether stays were appropriate or not. *Compare, e.g.*, *McElrath v. Uber Techs., Inc.*, No. 16-cv-

07241-JSC, 2017 WL 1175591, at *3–7 (N.D. Cal. Mar. 30, 2017) (granting a motion to stay

pending a Supreme Court decision in *Morris* in an employment case where the defendants moved

to compel arbitration) *with, e.g.*, *Daugherty v. SolarCity Corp.*, No. C 16-05155 WHA, 2017 WL

386253, at *3–4 (N.D. Cal. Jan. 26, 2017) (denying a motion to stay pending a Supreme Court

decision in *Morris* in an employment case where the defendants moved to compel arbitration).

With oral argument before the Supreme Court now complete and a decision likely to be issued

soon, however, courts have been more uniform in granting stays. *See Ralph v. Haj, Inc.*, No.

17cv1332 JM(JMA), 2017 WL 5248251, at *3 (S.D. Cal. Nov. 13, 2017) (deferring ruling on

motion to compel and enforceability of arbitration provision until after the Supreme Court issues

its decision in *Morris*); *Bui v. Northrop Grumman Sys. Corp.*, No. 15-cv-1397-WQH-WVG, 2017

WL 5256739, at *3 (S.D. Cal. Nov. 9, 2017) (staying employment class action in which motion to

compel arbitration was pending until after the Supreme Court issues its decision in Morris); *Conde*

*v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2017 WL 5172271, at *8 (N.D. Cal. Nov. 8,

2017) (*Conde II*) (same); *Robledo v. Randstad US, L.P.*, No. 17-cv-01003-BLF, 2017 WL

4934205, at *6 (N.D. Cal. Nov. 1, 2017) (same); *Bankwitz v. Ecolab, Inc.*, No. 17-cv-02924-EMC,

2017 WL 4642284, at *6 (N.D. Cal. Oct. 17, 2017) (same).

Courts look to several factors in determining whether a stay of one litigation pending

resolution of another litigation is appropriate, including "(1) the possible damage which may result

---

Compel Arbitration – No. 17-cv-00138-LB – ECF No. 28-1 at 12–13; Pls.' *Pera* Mot. to Compel
Arbitration Opp'n – No. 17-cv-00138-LB – ECF No. 30 at 2–3. The defendants make this concession
in order to preemptively rebut a potential argument by the plaintiffs that they have waived their right to
arbitration by not fully pursuing a motion to compel arbitration earlier, by arguing that *Morris* renders
any such earlier attempt to compel arbitration futile.

United States District Court
Northern District of California

from granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *accord, e.g.*, *Robledo*, 2017 WL 4934205, at *2 (applying these factors in pending motion to compel arbitration in employment class action to decide whether to stay proceedings pending a Supreme Court decision in *Morris*); *McElrath*, 2017 WL 1175591, at *5 (same). The court examines these factors here.

### 1.1    The Possible Damage That May Result From Granting a Stay

The plaintiffs identify two potential harms related to a stay: (1) they will be delayed in pursuing their claims, and (2) potential opt-in plaintiffs will be delayed in receiving notice of these actions, and their FLSA statutes of limitation will continue to run, thereby potentially prejudicing them. The defendants respond that (1) any prejudice to the named plaintiffs from a stay of their claims is minimal and (2) there is no prejudice to potential opt-in plaintiffs, because the potential opt-ins are all also class members in *Roe* and have already received one class notice in connection with that case, and it is therefore not reasonable to infer that potential opt-ins who were not spurred to action based on that notice in *Roe* would be prejudiced by a limited delay in receiving a second notice in these actions. Additionally, at the December 14, 2017 hearing, the court raised the prospect of tolling the statute of limitations for the potential opt-in plaintiffs, and the defendants agreed that doing so made sense.

The court agrees that the potential harm to the plaintiffs from the delay that may result from a stay of these proceedings until the Supreme Court issues a decision in *Morris* is minimal. *See, e.g.*, *Robledo*, 2017 WL 4934205, at *3 (holding in November 2017 that a stay "that will likely last no more than a few months while the Supreme Court writes its opinion" would not prejudice plaintiffs); *Bankwitz*, 2017 WL 4642284, at *5 (holding same in October 2017); *McElrath*, 2017 WL 1175591, at *5–6 (holding same in March 2017); *see also Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 1798926, at *4 (N.D. Cal. Apr. 17, 2015) (*Roe II*) (holding in the related

*Roe* class action that a stay would require plaintiffs to wait to pursue their claims did not impose unfair prejudice).

As for the potential opt-in plaintiffs, the court tolls the statute of limitations for their putative FLSA claims during any stay of these proceedings, thereby obviating that potential prejudice. *Cf. Coppernoll v. Hamcor, Inc.*, No. C 16-05936 WHA, 2017 WL 1508853, at *2–4 (N.D. Cal. Apr. 27, 2017) (holding that, in a putative employment class action stayed pending a Supreme Court decision in *Morris*, courts have the power to equitably toll FLSA claims, and tolling statute of limitations); *see also Roe II*, 2015 WL 1798926, at *5 (tolling statute of limitations in related *Roe* class action during stay pending appeal).

### 1.2    The Hardship and Inequity If the Cases Were Not Stayed

In assessing what hardship or inequity might result if these cases were not stayed, the court examines whether the arbitration provisions at issue here are enforceable assuming the Supreme Court were to reverse the Ninth Circuit in *Morris*. If the arbitration provisions are otherwise enforceable, then the harm that the defendants might suffer (if the cases are not stayed until the Supreme Court issued a decision) could be significant. As the court previously held in *Roe*, in circumstances such as these, "denying a stay would irreparably harm [the defendants]. This harm lies primarily in the resources that [the defendants] would have to expend pursuing this litigation — expenditures that, if the [higher court] ultimately reverses and [allows] this case to [go to] arbitration, would be largely squandered." *Roe II*, 2015 WL 1798926, at *3. If, however, the arbitration provisions are unenforceable even if the Supreme Court were to reverse the Ninth Circuit, the defendants might not suffer any harm even if the cases were not stayed.

The plaintiffs offer two principal arguments as to why the arbitration provisions would be unenforceable even if the Supreme Court reversed the Ninth Circuit: (1) the defendants have waived their right to arbitration, and (2) the arbitration provisions are unconscionable and therefore unenforceable. The defendants argue that neither of these arguments is a ground for holding their arbitration provisions unenforceable. In evaluating the parties' arguments, the court does not endeavor to fully adjudicate whether the arbitration provisions are or are not enforceable. Instead, it examines the issue preliminarily to determine whether the defendants have made

United States District Court
Northern District of California

enough of an argument — that the arbitration provisions would be enforceable but for the Ninth

Circuit's opinion in *Morris* — that not staying these proceedings until the Supreme Court issues

its decision in *Morris* would subject them to a hardship or inequity.

### 1.2.1 The Defendants Have Made Arguments That They Have Not Waived Their Putative Right to Arbitration That Are Sufficient to Show a Hardship or Inequity in the Absence of a Stay

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829

F.3d 1118, 1124 (9th Cir. 2016). But "'[w]aiver of a contractual right to arbitration is not favored,'

and, therefore, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Richards*

*v. Ernst & Young*, 744 F.3d 1072, 1074 (9th Cir. 2013) (quoting *Fisher v. A.G. Becker Paribas*

*Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). "Specifically, 'a party seeking to prove waiver of a right

to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts

inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting

from such inconsistent acts.'" *Id.* (internal brackets omitted) (quoting *Fisher*, 791 F.2d at 694).[7]

#### 1.2.1.1 Knowledge of an existing right to compel arbitration

Here, the first element of waiver is satisfied: it is undisputed that the defendants had

knowledge that their contracts with the plaintiffs contained arbitration provisions.

#### 1.2.1.2 Acts inconsistent with an existing right to compel arbitration

The plaintiffs make three principal arguments as to how the defendants acted inconsistently

with a right to compel arbitration: (1) the defendants moved to compel arbitration in the *Hughes*

case in 2016, but then changed course and affirmed that they would not be moving to compel

arbitration, (2) the defendants have filed motions to dismiss and opposed the plaintiffs' class-

---

[7] The factors that California state courts take into account are similar and include "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).

1    certification motions in both *Hughes* and *Pera* and therefore evinced an intent to litigate, not to

2    arbitrate, and (3) the defendants have litigated, not arbitrated, the related *Roe* action, which is

3    inconsistent with a right to arbitrate here.

4        The plaintiffs' third argument is easily dispensed with. The fact that the defendants reached a

5    settlement in court, not in arbitration, in the related *Roe* case — which they did only after the other

6    defendant in *Roe* first tried to compel arbitration and lost that fight — does not constitute a waiver

7    of their arbitration rights in these actions. "To hold that a defendant waives its right to compel

8    arbitration in one case by entering a judicial settlement in another case would create a disincentive

9    to settle for any defendant facing multiple suits. Such an outcome is to be avoided." *Lawrence v.*

10   *Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2003) (citing *Bischoff v.*

11   *DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) and other cases).

12       As for the plaintiffs' second argument, while the defendants have filed motions to dismiss and

13   filed oppositions to the plaintiffs' certification motions, none of these filings addressed the merits

14   of the plaintiffs' claims. (Their motions to dismiss were procedural attempts to dismiss or stay

15   these cases pending the settlement in *Roe*, and their certification oppositions were certification

16   oppositions.) These filings are not inconsistent with a right to arbitration. *See Martin*, 829 F.3d at

17   1125 ("filing a motion to dismiss that does not address the merits of the case is not sufficient to

18   constitute an inconsistent act [inconsistent with the right to arbitration]," while "seeking a decision

19   on the merits of an issue may satisfy this element"); *Conde II*, 2017 WL 5172271, at *6 ("[A]

20   motion to deny certification is likewise not premised on the merits of the case, and is insufficient

21   to constitute an act inconsistent with an intent to arbitrate.").

22       The plaintiffs' first argument is the most involved and requires a brief summary of the

23   procedural history of the *Hughes* litigation in particular. Ms. Hughes originally brought a

24   collective and class action complaint in June 2016 alleging FLSA and California state law claims.[8]

25   In September 2016, the defendants moved to compel arbitration.[9] In October 2016, Ms. Hughes

26

27   ───────────────
     [8] *Hughes* Class Action and Collective Action Compl. – No. 16-cv-03371-LB – ECF No. 2.

28   [9] Defs.' [Original] *Hughes* Mot. to Compel Arbitration – No. 16-cv-03371-LB – ECF No. 27.

United States District Court
Northern District of California

filed an amended complaint, joined now by Ms. Hermes and Ms. Nunez, alleging FLSA claims, California state law claims, and a new claim under the California Private Attorney General Act (PAGA).[10] In November 2016, the parties filed a joint case-management statement in which the defendants "affirm[ed] that [they] do not intend to move to compel arbitration of any of Plaintiffs' class, collective, or representative claims to arbitration."[11] The plaintiffs argue that the defendants' decision to expressly affirm that they would not pursue arbitration operates as a waiver.

The defendants respond that at the time they filed that case-management statement, they would not have been able to enforce their arbitration agreements because (1) the Ninth Circuit had issued its decision in *Morris*, which rendered the arbitration provisions at issue here unenforceable, and (2) Ms. Hughes had brought a PAGA claim, which is not arbitrable. The defendants argue that their attempt to move to compel arbitration was therefore futile — and a party cannot waive its right to arbitration when an attempt to pursue arbitration is futile. *See Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("[T]here can be no waiver [where] there was no existing right to arbitration."). The plaintiffs in turn respond that the Ninth Circuit actually issued its *Morris* decision in August 2016 — over a month before the defendants first tried to move to compel arbitration in September 2016 — and as *Morris* did not prevent the defendants from trying to compel arbitration then, they cannot claim now that *Morris* rendered any attempt to compel arbitration futile.[12] The defendants in turn respond that certain later district court opinions, which came out after they had filed their motion to compel arbitration, indicated that courts would read *Morris* broadly and signaled to them that an attempt to compel arbitration would have been futile.

---

[10] *Hughes* First Amend. Class Action and Collective Action Compl. – No. 16-cv-03371-LB – ECF No. 32. Ms. Hughes's PAGA claim is now being released as part of the *Roe* collective and class action settlement, *see* Defs.' *Hughes* Mot. to Dismiss, Myette Decl. Ex. 1 – No. 16-cv-03371-LB – ECF No. 88-3 at 8, and therefore it is no longer at issue here.

[11] *Hughes* Joint Case Mgmt. Statement – No. 16-cv-03371-LB – ECF No. 46 at 6.

[12] The plaintiffs also argue that if the Ninth Circuit's *Morris* decision in fact rendered the arbitration provisions unenforceable then it still renders them unenforceable now, as *Morris* is still in effect and remains the law of the circuit. While this is true, it does not help illuminate the underlying issue the court addresses here, namely, whether the court should stay these proceedings to await a decision in *Morris* from the Supreme Court.

1    The parties do not devote much effort to arguing whether the presence of Ms. Hughes's PAGA

2    claim affects arbitrability and futility — the defendants mention it in passing, and the plaintiffs do

3    not address it at all. In any event, this argument is easily dispensed with: the defendants cannot

4    base a futility argument on the presence of Ms. Hughes's PAGA claim. A defendant can move to

5    compel arbitration of non-PAGA claims even if they are coupled with a PAGA claim. *See Franco*

6    *v. Arakelian Enters., Inc.*, 234 Cal. App. 4th 947, 965–66 (2015) (holding that a party can compel

7    arbitration of individual claims regardless of the presence of a PAGA claim); *accord Aviles v.*

8    *Quik Pick Express, LLC*, __ F. App'x __, No. 15-56951, 2017 WL 5643191, at *2 (9th Cir. Nov.

9    24, 2017) (same). The presence of a PAGA claim therefore does not render any attempt to compel

10   arbitration futile.

11   The trickier issue is the parties' competing *Morris* arguments. Assuming the Ninth Circuit's

12   opinion in *Morris* does in fact render the arbitration provisions here unenforceable — and both

13   sides agree that it does — the issue would have been simple if *Morris* had been issued after the

14   defendants had moved to compel arbitration, and the defendants withdrew their motion in the

15   wake of that decision. In that case, the motion would be futile, and the defendants therefore could

16   not be deemed to have their right to make an arbitration argument later if *Morris* were ever

17   overturned. *See Letizia*, 802 F.2d at 1187 ("[T]here could be no waiver here because there was no

18   existing right to arbitration."). The issue is somewhat trickier here because the Ninth Circuit

19   issued its *Morris* opinion before the defendants moved to compel arbitration, and the defendants

20   nevertheless moved to compel arbitration in the face of *Morris*, only to then (so they claim)

21   belatedly realize that *Morris* rendered their motion futile. Nevertheless, the court finds that despite

22   this, the defendants have not necessarily waived their right to seek arbitration should *Morris* be

23   reversed. The futility doctrine, as described by the Ninth Circuit, focuses on whether there was an

24   existing right to arbitration under "the then-prevailing law in this circuit," *Letizia*, 802 F.2d at

25   1187, not whether, or when, a party realized what the law was. Additionally, to hold that a party

26   that belatedly realizes its motion is futile cannot withdraw it without running the risk of waiver

27   would create a disincentive for parties to withdraw motions, thereby increasing costs and taxing

28   the resources of litigants and the court. The defendants have reasonably strong arguments that the

United States District Court
Northern District of California

1    plaintiffs have not met their "heavy burden of proof," *Richards*, 744 F.3d at 1074, in establishing

2    that the defendants acted inconsistently with an existing right to compel arbitration.

### 1.2.1.3    Prejudice to the parties opposing arbitration

4    "[I]n order to establish prejudice, the plaintiffs must show that, as a result of the defendants

5    having delayed seeking arbitration, they have incurred costs that they would not otherwise have

6    incurred, that they would be forced to relitigate an issue on the merits on which they have already

7    prevailed in court, or that the defendants have received an advantage from litigating in federal

8    court that they would not have received in arbitration." *Martin*, 829 F.3d at 1127.

9        The only prejudice the plaintiffs claim is a generalized complaint about the delay of time.[13]

10   They do not claim that they incurred any costs from that delay, nor that they are being forced to

11   relitigate a merits issue on which they have already prevailed in court (as no merits issues have

12   been decided in these cases), nor that the defendants have received an advantage from litigating in

13   court that they would not have received in arbitration. The defendants have a reasonably strong

14   argument that the plaintiffs' generalized complaint is insufficient to carry the "heavy burden" that

15   the plaintiffs bear in showing prejudice. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270

16   (9th Cir. 2002) (party claiming waiver "bears a 'heavy burden of proof'" and must "articulate how

17   [s]he was prejudiced" to establish waiver); *Conde II*, 2017 WL 5172271, at *7 (rejecting claim of

18   prejudice where plaintiffs claimed that "they have expended time and money" because of the

19   defendant's delay in moving to compel arbitration but did not articulate "specifics as to the

20   resources [they] assert were wasted").[14]

21

---

22   [13] *See* Pls.' *Hughes* Mot. to Compel Arbitration Opp'n – No. 16-cv-03371-LB – ECF No. 93 at 18; Pls. *Pera* Mot. to Compel Arbitration Opp'n – No. 17-cv-00138-LB – ECF No. 30 at 4–5.

23

24   [14] The cases that the plaintiffs cite regarding prejudice are distinguishable, as each of them involved scenarios in which the party opposing arbitration had either already incurred substantial litigation costs

25   in discovery or had litigated and won a motion on the merits that arbitration threatened to undo. *See Ford v. Yasuda*, No. 5:13-cv-01961-PSG-DTB, 2015 WL 3650216, at *8–9 (C.D. Cal. Apr. 29, 2015) (a case where defendants lost a merits motion on the issue of whether the plaintiffs were employees,

26   where compelling arbitration would force the plaintiffs to relitigate the issue and allow the defendants to forum-shop), *aff'd sub. nom. Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016); *Kelly v. Pub. Util.*

27   *Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (a case in which the parties actively litigated in court for eleven months, including by taking discovery and litigating preliminary-injunction motions and motions to dismiss); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945,

28   949 (1st Cir. 2014) (a case in which "the parties engaged actively in discovery; and the [party opposing

United States District Court
Northern District of California

1    The court need not definitively resolve all questions on the issue of waiver here. The ultimate

2    underlying issue at this juncture is whether the court should stay these proceedings pending the

3    Supreme Court's decision in *Morris*, which entails a consideration of the hardship or inequity that

4    a party might suffer in the absence of a stay. As described above, the defendants have made

5    sufficiently strong arguments that they have not waived their arbitration rights to make a showing

6    that they would suffer hardship and inequity if they were required to go forward now before the

7    Supreme Court issues its decision.

8        **1.2.2    The Defendants Have Made Arguments That the Arbitration Clauses Are**
         **Not Unconscionable That Are Sufficient to Show a Hardship or Inequity in**
9        **the Absence of a Stay**

10           **1.2.2.1    Governing Law**

11   The Federal Arbitration Act provides that arbitration agreements are unenforceable "upon such

12   grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally

13   applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to

14   invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v.*

15   *Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration

16   agreement is enforceable under the laws of the state where the contract was formed. *First Options*

17   *of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165,

18   1170 (9th Cir. 2003).

19   Contractual unconscionability has both a procedural and a substantive component. *Armendariz*

20   *v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The "prevailing view" is that

21   both components must be present before a contract can be deemed unconscionable. *Id.* "[T]he

22   more substantively oppressive the contract term, the less evidence of procedural unconscionability

23

24   ───────────────────────────

25   arbitration] incurred what must have been substantial costs associated with more than a dozen
     depositions, interrogatories, document production, and conferences with the magistrate judge and
     opposing counsel"); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 460–61 (3d Cir. 2011) (a case in

26   which "the parties took the depositions of eight separate individuals; exchanged extensive written
     discovery responses, including 200 separate interrogatories, requests for admission and written

27   document production requests; the parties exchanged more than 20,000 pages of documents and
     submitted to the District Court approximately 100 pages of Proposed Findings of Fact and Conclusions

28   of Law"). The plaintiffs have incurred no analogous costs or prejudice here.

United States District Court
Northern District of California

1   is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* "The

2   party opposing arbitration bears the burden of proving that the arbitration provision is

3   unconscionable." *Correa v. Firestone Complete Auto Care*, No. C 13-0123 CW, 2013 WL

4   6173651, at *2 (N.D. Cal. Nov. 25, 2013) (citing *Arguelles-Romero v. Superior Court*, 184 Cal.

5   App. 4th 825, 836 (2010)).

6          ### 1.2.2.2      Application

7          In the related *Roe* litigation, the court previously found the arbitration clauses used by the

8   nightclubs at issue here both procedurally and substantively unconscionable. *Roe v. SFBSC*

9   *Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 930683, at *5–11 (N.D. Cal. Mar. 2, 2015) (*Roe I*).

10  The plaintiffs argue that the same outcome is compelled here.

11         In response, the defendants first argue that the plaintiffs here were not subject to as much

12  procedural unconscionability when they signed their contracts as the plaintiffs in *Roe* were. The

13  *Roe* plaintiffs "submitted declarations in which they allege that, when *they* signed *their* contracts,

14  they were 'mostly naked,' were told that the contracts were 'time-sensitive,' were 'rushed' into

15  signing them, and were told that they could not bring the contracts home to review.'" *Roe I*, 2015

16  WL 930683, at *7 (emphasis in original). The declarations that the plaintiffs make here bear

17  certain similarities to those of the plaintiffs in *Roe*, but also some differences (none of the

18  plaintiffs here say that there were rushed into signing contracts while naked, for example). The

19  defendants may be able to make arguments that the arbitration agreements that the plaintiffs in

20  these cases signed, as contrasted to the ones in *Roe*, were not procedurally unconscionable.

21         Regarding substantive unconscionability, the plaintiffs make two primary arguments. First,

22  they argue the provisions are unconscionable because the provisions (1) require them to share all

23  costs and fees associated with arbitration and (2) allow the defendants to recover costs and

24  attorney's fees from them should they lose an action to enforce the arbitration agreement but do

25  not allow them to recover costs and attorney's fees should they win. Second, they argue the

26  provisions are unconscionable because the provisions prohibit them from filing a class action

27  against the defendants but allow the defendants to file a class action against them and other

28  dancers. The plaintiffs argue that both of these were bases for finding similar arbitration

United States District Court
Northern District of California

1    provisions unconscionable in the related *Roe* litigation, *see Roe I*, 2015 WL 930683, at \*9–11, and

2    the same conclusion is compelled here.

3         As to the plaintiffs' first argument regarding arbitration fees and costs, there is a key

4    distinction in the substantive unconscionability analysis here as compared to *Roe*. In *Roe*, the

5    contracts required the parties to split the cost of arbitration evenly between the plaintiffs and the

6    defendants. The Ninth Circuit has repeatedly found that provisions requiring employees to split

7    arbitration fees with employers are unconscionable and therefore unenforceable under California

8    law. *See Roe I*, 2015 WL 930683, at \*11 (citing cases). This time around, however, the defendants

9    have agreed to pay all costs associated with arbitration and forgo any claims for costs and fees

10   against the plaintiffs.[15] The Ninth Circuit has indicated that an employer may be able to take an

11   arbitration agreement that was originally unconscionable because it requires an employee to bear

12   half the cost of arbitration and render it non-unconscionable after-the-fact by agreeing to bear the

13   full cost of arbitration. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016)

14   (*Mohamed II*), *aff'g in part and rev'g in part* 109 F. Supp. 3d 1185 (N.D. Cal. 2015) (*Mohamed I*).

15        The arbitration clause in *Mohamed* provided that "'[I]n all cases where required by law,

16   [employer] will pay the Arbitrator's and arbitration fees. If under applicable law [employer] is not

17   required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned

18   between the Parties in accordance with said applicable law, and any disputes in that regard will be

19   resolved by the Arbitrator." *Mohamed I*, 109 F. Supp. 3d at 1207. The district court there held that

20   this clause was unconscionable, as "[u]nder California law, any clause in an employment

21   agreement that would impose 'substantial forum fees' on an employee in her attempt to vindicate

22   her unwaivable statutory rights is contrary to public policy and therefore substantively

23   unconscionable." *Id.* (citing *Armendariz*, 24 Cal. 4th at 110). The employer there tried to "walk

24   back" this provision by offering "to pay any [arbitration] fees." *Id.* at 1210. The district court

25   noted that the employer made this offer only after the litigation had commenced, not when the

26

27

28   [15] Dec. 14, 2017 Hr'g (agreeing to pay all arbitration costs and forgo claims for costs and fees against the plaintiffs).

United States District Court
Northern District of California

1    contract was first signed, and held that "[t]his after-the-fact concession cannot render the

2    [arbitration] clause conscionable." *Id.* But the Ninth Circuit reversed the district court and

3    compelled arbitration, holding that because the employer "ha[d] committed to paying the full cost

4    of arbitration," the court need not consider whether the fee term would have been unconscionable

5    "if it were enforced as written." *Mohamed II*, 848 F.3d at 1212.

6        As to the plaintiffs' second argument regarding whether the arbitration provisions operate as a

7    unidirectional prohibition on class actions, the defendants respond that the provisions actually

8    operate as a bidirectional prohibition, barring both sides from bringing class actions. Again, the

9    court need not definitively resolve this issue, or resolve all questions as to whether the contracts

10   and the arbitration provisions here are unconscionable or not. It is enough to say at this juncture

11   that the defendants have made a sufficiently strong argument that the provisions are not

12   unconscionable and therefore (assuming a reversal in *Morris*) enforceable, for the second stay

13   factor — "the hardship or inequity which a party may suffer in being required to go forward,"

14   *CMAX*, 300 F.2d at 268 — to weigh in favor of granting a stay. *See generally Roe II*, 2015 WL

15   1798926, at *3 (finding that potential harm to defendant in having to proceed warranted granting a

16   stay).

17       **1.3    The Orderly Course of Justice That Could Be Expected to Result From a Stay**

18       The third factor — "the orderly course of justice measured in terms of the simplifying or

19   complicating of issues, proof, and questions of law which could be expected to result from a stay,"

20   *CMAX*, 300 F.2d at 268 — weighs heavily in favor of granting a stay. It would be far simpler for

21   the court to address the arbitration question and, if necessary, the remainder of these cases, after

22   the Supreme Court issues its *Morris* decision and clarifies the law surround arbitration provisions

23   in putative class actions. By contrast, in the absence of a stay, "it would prove to be 'an

24   extraordinary waste of time and money' to continue litigating th[ese] case[s] 'only to have to do it

25   all again because . . . the parties and the Court were proceeding under a legal framework that the

26   Supreme Court determined did not apply.'" *Robledo*, 2017 WL 4934205, at *5 (internal brackets

27   omitted) (citing *Meijer, Inc. v. Abbott Labs.*, No. C 07-5470 CW, 2009 WL 723882, at *4 (N.D.

28   Cal. Mar. 18, 2009)); *accord McElrath*, 2017 WL 1175591, at *6 (same).

ORDER – Nos. 16-cv-03371-LB, 17-cv-00138-LB          15

United States District Court
Northern District of California

1    For the foregoing reasons, the court finds it appropriate to defer ruling on the defendants'

2    motion to compel arbitration and to stay the proceedings pending the Supreme Court's decision in

3    *Morris*.

4

### 2.   Staying the Issuance of Notice to Potential Opt-In Plaintiffs

5

6    As it was a focus of the parties at the December 14, 2017 hearing, the court briefly addresses

7    the issue of notice to potential opt-in plaintiffs and its reasons for staying issuance of notice as part

8    of its overall stay of these cases.

9    As the court previously held in *Roe*, and as other courts have held, the issue of whether the

10   named plaintiffs can litigate their claims in a court or must arbitrate their claims is a threshold

11   issue. If the arbitration provisions the named plaintiffs signed with the defendants are enforceable,

12   the plaintiffs cannot pursue these cases in court on behalf of either themselves or other similarly

13   situated dancers. To paraphrase *Roe*, the court therefore thinks it wiser to forgo the time, effort,

14   and expense of issuing notice until the Supreme Court issues a decision clarifying the law

15   regarding the enforceability of the arbitration provisions the defendants seek to invoke. *Cf. Roe I*,

16   2015 WL 1798926, at *5 ("[T]he better course is to first determine the enforceability of the

17   arbitration agreements before addressing the scope and management of the remainder of this

18   litigation.") (quoting *Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2007 WL 703609, at *3

19   (N.D. Cal. Mar. 5, 2007)); *accord, e.g.*, *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377 (5th

20   Cir. 2016) ("[A] district court must consider an agreement to arbitrate as a 'threshold question.'").

21   The plaintiffs argue that notice should be issued now. To support their position, the plaintiffs

22   cited to a number of cases in their briefs and at the December 14, 2017 hearing, in which they

23   claimed that other courts had allowed notice to be issued before arbitration issues were settled. In

24   each of those cases, however, there was at least one named plaintiff who had not signed any

25   arbitration agreement. For example, *Conde v. Open Door Marketing, LLC*, No. 15-cv-04080-

26   KAW, 2016 WL 1427641 (N.D. Cal. Apr. 12, 2016) (*Conde I*) and *D'Antuono v. C & G of Groton,

27   Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011) — the two cases on

28   which the plaintiffs most heavily relied at the December 14, 2017 hearing — were both cases in

which at least one named plaintiff signed no arbitration agreement at all, and hence the litigation would continue in some fashion no matter how the court ruled on the enforceability of the arbitration provisions at issue. *See Conde I*, 2016 WL 1427641, at *8 n.2 (two of the three named plaintiffs had not signed any arbitration agreements, and the court specifically "disregarded" the declaration of the third named plaintiff in considering the plaintiffs' request that notice be issued); *D'Antuono*, 2011 WL 5878045, at *2 (one of the three named plaintiffs had not signed any arbitration agreement, and the court specifically "administratively close[d]" the cases of the other two named plaintiffs before considering the plaintiffs' request that notice be issued).[16] Among other things, those decisions addressed whether it was appropriate to issue notice in a situation in which many members *of the class* had potentially signed arbitration agreements. *See Conde I*, 2016 WL 1427641, at *9 (evaluating whether notice should be issued where "any putative class member who worked directly for [defendant] must arbitrate his or her claim and thus lacks standing to assert claims in this action); *D'Antuono*, 2011 WL 5878045, at *3 (evaluating whether notice should be issued where "many of the potential opt-in plaintiffs have likely signed

---

[16] The other cases the plaintiffs cite in their briefs are all similar. *See Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 782 (C.D. Ill. 2015) (defendant did not begin adding arbitration provisions into its contracts until after the plaintiff's claims arose and the plaintiff filed the case); *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *6, 9 (N.D. Ill. Sept. 30, 2013) (two out of five opt-in plaintiffs had signed arbitration agreements but the named plaintiff had not, and the court stayed the action with respect to those two opt-ins); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 643 (S.D.N.Y. 2013) (named plaintiff did not sign an arbitration agreement); *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360(RRM)(LB), 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012) (discussing only whether the class should exclude class members who signed arbitration agreements, with no discussion that the named plaintiffs had signed arbitration agreements); *Sealy v. Keiser Sch., Inc.*, No. 11-61426-CIV, 2011 WL 7641238, at *3 (S.D. Fla. Nov. 8, 2011) (addressing arguments that the vast majority of the class executed arbitration agreements and hence the named plaintiff was not "similarly situated" to them); *Davis v. Four Seasons Hotel Ltd.*, No. 08-00525 HG-BMK, 2011 WL 4590393, at *3 (D. Haw. Sept. 30, 2011) (three of six named plaintiffs executed arbitration agreements); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2011 WL 1772401, at *3, 5 (D. Colo. May 10, 2011) (defendant was unable to produce evidence that plaintiff had signed an arbitration agreement); *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009) (discussing only whether the class should exclude class members who signed arbitration agreements, with no discussion that the named plaintiff had signed an arbitration agreement); *Davis v. NovaStar Mortg.*, 408 F. Supp. 2d 811, 817–18 (W.D. Mo. 2005) (discussing only whether the class should exclude class members who signed arbitration agreements, with no discussion that the named plaintiff had signed an arbitration agreement); *Villatoro v. Kim Son Rest.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (discussing whether the defendant's "newly implemented arbitration policies and newly signed arbitration/release agreements" would affect the scope of the class, with no discussion that the named plaintiff had signed one of these new agreements).

1   [arbitration] agreements"). By contrast, the issue here is whether notice should be issued in a

2   situation in which each of the *named plaintiffs* has signed an arbitration agreement. In this latter

3   situation, the court finds it appropriate to stay the issue of notice until after it issues its

4   determination on the arbitration issue. *See Roe I*, 2015 WL 1798926, at *5; *accord, e.g.*, *Reyna*,

5   839 F.3d at 376 (holding that courts should "address the arbitrability of [a named plaintiff]'s

6   claims at the outset of proceedings, prior to considering conditional certification" and that cases

7   where "court[s] decline to determine the validity of arbitration agreements with *potential opt-in*

8   *plaintiffs*, not the arbitration agreements with the . . . named plaintiff[s]" are inapposite) (emphasis

9   in original).[17]

10

11                                          **CONCLUSION**

12          For the foregoing reasons, the court defers decision on the parties' pending motions. The court

13   additionally stays these cases pending the Supreme Court's decision in *Morris* and the court's

14   decision, to follow thereafter, on the defendants' motions to compel arbitration. The court

15   equitably tolls the FLSA statute of limitations for potential opt-in plaintiffs while these actions are

16   stayed.

17

18          **IT IS SO ORDERED.**

19          Dated: December 18, 2017

20                                                          _____

21                                                          LAUREL BEELER
                                                            United States Magistrate Judge
22

23   ───────────────
     [17] The plaintiffs also argue that one of the opt-in plaintiffs to the *Hughes* action, a Diana Tejada, never
24   agreed to arbitration, and that she could provide a basis for issuing notice. Pls.' *Hughes* Mot. to
     Compel Arbitration Opp'n – No. 16-cv-03371-LB – ECF No. 93 at 8–9. The defendants maintain that
     Ms. Tejada did sign arbitration agreements. Defs.' *Hughes* Mot. to Compel Arbitration Reply – No.
25   16-cv-03371-LB – ECF No. 97 at 11–12. Whether Ms. Tejada did or did not sign an arbitration
     agreement is immaterial at this juncture, as Ms. Tejada did not move for certification or for issuance of
26   a notice. *See* Pls.' *Hughes* Supplemental Mem. in Supp. of Mot. for Conditional Certification and
     Issuance of Notice – No. 16-cv-03371-LB – ECF No. 89 at 32 (filed on behalf of Ms. Hughes, Ms.
27   Nunez, and Ms. Hermes, not Ms. Tejada); Pls.' *Pera* Mot. for Conditional Certification and Issuance
     of Notice – No. 17-cv-00138-LB – ECF No. 25 at 3 (filed on behalf of Ms. Pera and Ms. Murphy, not
28   Ms. Tejada).

United States District Court
Northern District of California