UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| NICOLE HUGHES, et al., | Case No. 16-cv-03371-LB |
| Plaintiffs, | |
| v. | **ORDER COMPELLING ARBITRATION OTHER THAN WITH RESPECT TO DIANA TEJADA'S POST-JANUARY-2017 CLAIMS** |
| S.A.W. ENTERTAINMENT, LTD, et al., | |
| Defendants. | Re: ECF Nos. 138, 139, 152, 153, 161 |

| ELANA PERA, et al., | Case No. 17-cv-00138-LB |
| Plaintiffs, | |
| v. | **ORDER COMPELLING ARBITRATION** |
| S.A.W. ENTERTAINMENT LTD., | |
| Defendant. | Re: ECF Nos. 62, 70 |

**INTRODUCTION**

These two actions — *Hughes v. S.A.W. Entertainment, Ltd.* and *Pera v. S.A.W. Entertainment, Ltd.* — are putative class- and collective-action wage-and-hour labor disputes brought by exotic dancers suing the companies that managed and operated the nightclubs where they worked. In *Hughes*, named plaintiffs Nicole Hughes, Angelynn Hermes, Penny Nunez, and Diana Tejada and

opt-in plaintiffs Poohrawn Mehraban[1] and Dora Marchand[2] are suing named defendants S.A.W. Entertainment, Ltd. (d/b/a Larry Flynt's Hustler Club), Gold Club – S.F., LLC (d/b/a Gold Club San Francisco), and SFBSC Management, LLC, a Nevada company that allegedly maintains management authority and control over the operations of the Hustler Club and the Gold Club. In *Pera*, named plaintiffs Elana Pera and Sarah Murphy and opt-in plaintiffs Gypsy Vidal,[3] Tiffany Zoumer,[4] and Dora Marchand[5] are suing defendant S.A.W. Entertainment Ltd. (d/b/a Condor Gentleman's Club). In both cases, the plaintiffs are pursuing class- and collective-action claims under the Fair Labor Standards Act ("FLSA"), the California Labor Code, and the California Unfair Competition Law ("UCL"). In *Hughes*, Ms. Hughes also is bringing a claim for penalties under the California Private Attorney General Act ("PAGA") against S.A.W. Entertainment.

In August 2018, the court granted a motion by the defendants to compel arbitration and ordered Mses. Hughes, Hermes, Nunez, Pera, Murphy, and Marchand (the "Round 1 Plaintiffs") to submit all claims other than PAGA claims to binding arbitration. *Hughes v. S.A.W. Entm't, Ltd.*, No. 16-cv-03371-LB, 2018 WL 4109100, at *5 (N.D. Cal. Aug. 29, 2018) (*Hughes II*). The court further stayed each plaintiff's PAGA claims (if any) while her arbitration was pending. *Id.* The court did not expressly address in that order whether Mses. Tejada, Mehraban, Vidal, or Zoumer (the "Round 2 Plaintiffs") had to submit their claims to arbitration.

Ms. Hughes (and Ms. Mehraban) offered to submit to arbitration their claims alleging unlawful retaliation. Ms. Hughes and Ms. Mehraban refused to submit their other claims to arbitration, and the other plaintiffs did not submit any claims to arbitration. Instead, Mses. Pera, Nunez, Murphy, Mehraban, Hermes, and Vidal (the "Intervenors") moved to intervene as plaintiffs in a separate

---

[1] *Hughes* Mehraban Opt-In Consent – No. 3:16-cv-03371-LB, ECF No. 72. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Hughes* Marchand Opt-In Consent – No. 3:16-cv-03371-LB, ECF No. 86.

[3] *Pera* Vidal Opt-In Consent – No. 3:17-cv-00138-LB, ECF No. 13.

[4] *Pera* Zoumer Opt-In Consent – No. 3:17-cv-00138-LB, ECF No. 13.

[5] *Pera* Marchand Opt-In Consent – No. 3:17-cv-00138-LB, ECF No. 24.

collective and class action against S.A.W. Entertainment, Gold Club, and other defendants that was pending (at the time) in the California Superior Court for San Diego County: *Roe v. Deja Vu Services, Inc.*, No. 37-2018-00028044-CU-OE-CTL (Cal. Super. Ct. San Diego Cty. filed May 31, 2018) (*State Roe*).[6] The Superior Court granted the Intervenors' motion to intervene, and the Intervenors filed a new complaint in intervention (and then a First Amended Complaint in intervention) in *State Roe* against S.A.W. Entertainment, Gold Club, and SFBSC Management.

The parties have filed a number of motions and cross-motions here. First, the defendants move for enforcement of the court's August 2018 arbitration order and ask the court to hold the Round 1 Plaintiffs in contempt for violating the court's order by filing new litigation complaints against S.A.W. Entertainment and Gold Club in *State Roe*.[7] The plaintiffs in turn move for reconsideration of the court's August 2018 arbitration order, arguing that the Superior Court held that the *State Roe* defendants waived their right to arbitration and that the Superior Court's holding is binding here.[8] Second, the defendants move to compel all plaintiffs (including Round 2 Plaintiffs) to submit all non-PAGA claims (including claims against SFBSC Management) to binding arbitration.[9] Third, the defendants move to dismiss (1) the plaintiffs' PAGA claims on the grounds that (a) they are barred by the statute of limitations and (b) the plaintiffs' PAGA notice to SFBSC Management and to the California Labor and Workforce Development Agency was deficient and (2) certain of the plaintiffs' non-PAGA claims against SFBSC Management on the ground that they are barred by the statute of limitations.[10]

---

[6] *State Roe* was removed to the U.S. District Court for the Southern District of California on January 28, 2019. *Roe v. Deja Vu Servs., Inc.*, No. 3:19-cv-00196-DMS-KSC (S.D. Cal. removed Jan. 28, 2019). While it now is a federal action, the court refers to it here as *State Roe* (1) because all substantive rulings in that action occurred while it was in state court and (2) to distinguish it from another action captioned *Roe* pending in federal court, discussed further below.

[7] *Hughes* Defs. Mot. to Enforce Arb. Order– No. 3:16-cv-03771-LB, ECF No. 152; *Pera* Def. Mot. to Enforce Arb. Order – No. 3:17-cv-00138-LB, ECF No. 70.

[8] *Hughes* Pls. Mot. for Recons. – No. 3:16-cv-03371-LB, ECF No. 161.

[9] *Hughes* Defs. Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 139; *Hughes* Defs. Mot. to Compel Arb. re Mehraban – No. 3:16-cv-03371-LB, ECF No. 153; *Pera* Def. Mot. to Compel Arb. re Vidal and Zoumer – No. 3:17-cv-00138-LB, ECF No. 62.

[10] *Hughes* Defs. Mot. to Dismiss – No. 3:16-cv-03371-LB, ECF No. 138.

1    The court held a hearing on the parties' motions and cross-motions and now orders the

2    following. The court grants the defendants' motion to enforce the August 2018 arbitration order

3    against the Round 1 Plaintiffs (but denies the motion to hold them in contempt or impose

4    sanctions). The court denies the plaintiffs' motion for reconsideration of the August 2018

5    arbitration order. The court grants all pending motions to compel arbitration except that it denies

6    the motion to compel with respect to the claims Ms. Tejada brings in this action arising after

7    January 31, 2017 (the "Post-January-2017 Claims"). The court orders the plaintiffs to submit all

8    claims other than PAGA claims and Ms. Tejada's Post-January-2017 Claims to binding

9    arbitration. The court stays each plaintiff's PAGA claim (if any) while that respective plaintiff's

10   arbitration is pending. The court administratively terminates the defendants' motion to dismiss

11   without prejudice with respect to each plaintiff while that respective plaintiff's arbitration is

12   pending.

13   As the parties and the court discussed at the hearing, the parties will brief (1) the next steps for

14   Ms. Tejada's Post-January-2017 Claims, including whether they should be stayed pending the

15   arbitration of her claims arising on or before January 31, 2017 (the "Pre-January-2017 Claims"),

16   and (2) whether the court should authorize issuance of an FLSA notice.

## STATEMENT

19   The wage-and-hours claims at issue have a long history, spanning multiple separate class and

20   collective actions filed in several federal and state courts.[11]

22   **1. The *Federal Roe* Action**

23   In August 2014, a former exotic dancer filed a putative class and collective action against

24   SFBSC Management before the undersigned: *Roe v. SFBSC Management., LLC*, No. 3:14-cv-

---

[11] *See* Joint Chart of Wage-and-Hour Class- or Collective-Action Claims Against S.A.W. Entm't, Ltd., Gold Club – S.F., LLC, or SFBSC Mgmt. – No. 3:16-cv-03371-LB, ECF No. 147.

03616-LB (N.D. Cal. filed Aug. 8, 2014) (*Federal Roe*).[12] In November 2014, the complaint was amended to (among other things) add a second plaintiff.[13] The court allowed the two plaintiffs to remain anonymous under the pseudonyms "Jane Roe 1" and "Jane Roe 2." *Roe v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015) (*Federal Roe I*).

In December 2014, SFBSC Management moved to compel Jane Roes 1 and 2 to submit their claims to binding arbitration based on "performer contracts" that included mandatory-arbitration provisions that Jane Roes 1 and 2 had signed with S.A.W. Entertainment and Gold Club, which operated the nightclubs where they worked.[14]

In March 2015, the court denied SFBSC Management's motion to compel arbitration. *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 930683 (N.D. Cal. Mar. 2, 2015) (*Federal Roe II*). The court held that the arbitration provisions were unenforceable as unconscionable. *Id.* at *5, *12. The court held that "there [was] at least mild procedural unconscionability" in light of the fact that Jane Roes 1 and 2 "ha[d] submitted declarations in which they allege that, when *they* signed *their* contracts, they were 'mostly naked,' were told that the contracts were 'time-sensitive,' were 'rushed' into signing them, and were told that they could not bring the contracts home to review." *Id.* at *7–8 (emphasis in original).[15] The court additionally held that there was substantive unconscionability in light of the fact that (among other things) the arbitration provisions required Jane Roes 1 and 2 to bear half of the arbitration costs and subjected them to potential fee-shifting — i.e., bearing the defendants' costs and fees — if they were to lose their arbitration. *Id.* at *11. The court declined to sever the unconscionable terms and instead deemed the entire arbitration provisions unenforceable. *Id.* at *11–12.

---

[12] *Federal Roe* Compl. – No. 3:14-cv-03616-LB, ECF No. 1.

[13] *Federal Roe* Amend. Compl. ("AC") – No. 3:14-cv-03616-LB, ECF No. 11.

[14] *Federal Roe* Def. Mot. to Compel Arb. – No. 3:14-cv-03616-LB, ECF No. 25; *Federal Roe* Performer Contracts – No. 3:14-cv-03616-LB, ECF Nos. 25-5, 25-6, 25-7.

[15] SFBSC Management submitted declarations "deny[ing] such charges in only general terms" but did not provide specific rebuttals to Jane Roes 1 and 2's declarations. *Federal Roe II*, 2015 WL 930683, at *7.

SFBSC Management appealed the court's *Federal Roe* denial of arbitration to the Ninth Circuit.[16] SFBSC Management also moved to stay the *Federal Roe* action while its appeal was pending.[17] In April 2015, the court granted SFBSC Management's motion and stayed the *Federal Roe* action. *Roe v. SFBSC Mgmt.*, No. 14-cv-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) (*Federal Roe III*).

While the appeal was pending, the *Federal Roe* parties engaged in several rounds of mediation with Circuit Mediator Peter Sherwood, including two in-person mediation conferences.[18]

In July 2016, the Ninth Circuit affirmed, on alternate grounds, the court's holding that the arbitration provisions were unenforceable. *Roe v. SFBSC Mgmt., LLC*, 656 F. App'x 828 (9th Cir. 2016) (*Federal Roe IV*). The Ninth Circuit did not reach the question of whether the arbitration provisions were unconscionable. Instead, the Ninth Circuit held that SFBSC Management — a nonsignatory to Jane Roes 1 and 2's performer contracts with S.A.W. Entertainment and Gold Club — "had failed to establish that it has standing to enforce the arbitration clause[.]" *Id.* at 829. SFBSC Management argued that it had standing to enforce the arbitration provisions because it had an agent-principal, or alternatively a principal-agent, relationship with S.A.W. Entertainment and Gold Club. *Id.* at 830.[19] SFBSC Management noted that Jane Roes 1 and 2 themselves had alleged in their complaint that SFBSC Management acted as an agent of the nightclubs. *Id.* at 829. The Ninth Circuit observed that SFBSC Management had denied those allegations in its answer, however, and had submitted declarations attesting that it did not have an agent-principal or principal-agent relationship with the nightclubs. *Id.* at 829–30. The Ninth Circuit held that SFBSC Management thus could not enforce the arbitration provisions in Jane Roes 1 and 2's performer contracts under an agency theory. *Id.* at 829–31.

---

[16] *Federal Roe* Def. Notice of Appeal – No. 3:14-cv-03616-LB, ECF No. 58.

[17] *Federal Roe* Def. Mot. to Stay Pending Appeal – No. 3:14-cv-03616-LB, ECF No. 60.

[18] *Federal Roe* Notice of Settlement – No. 3:14-cv-03616-LB, ECF No. 103 at 1.

[19] SFBSC Management relied solely on agency arguments and did not make any estoppel arguments. *Federal Roe IV*, 656 F. App'x at 829 n.3.

Following the Ninth Circuit's decision, the *Federal Roe* parties engaged in a third in-person mediation conference with Mr. Sherwood in October 2016 and continued to work with Mr. Sherwood for several weeks thereafter.[20] In December 2016, the *Federal Roe* parties announced that they reached a settlement that they were in the process of memorializing in a written settlement agreement.[21]

In March 2017, Jane Roes 1 and 2 filed the *Federal Roe* parties' written class-settlement agreement and a motion for preliminary approval of the settlement.[22] Among other things, the parties' settlement agreement called for Jane Roes 1 and 2 to file a Second Amended Complaint (with additional named plaintiffs Jane Roes 3, 9, and 10) that named additional entities beyond SFBSC Management as defendants.[23] The new proposed defendants included S.A.W. Entertainment and Gold Club.[24]

Two weeks later, Nicole Hughes, Angelynn Hermes, Penny Nunez, Elana Pera, Sarah Murphy, Poohrawn Mehraban, Gypsy Vidal, and Tiffany Zoumer (and another dancer named Devon Locke, who is not a plaintiff here) filed an objection to the proposed settlement.[25]

In April 2017, the court held a hearing with the *Federal Roe* parties and objectors.[26] Following the hearing, the court preliminarily approved the settlement, allowed Jane Roes 1, 2, 3, 9, and 10 to file their Second Amended Complaint, and ordered notice to be issued to the members of the class.[27]

---

[20] *Federal Roe* Notice of Settlement – No. 3:14-cv-03616-LB, ECF No. 103 at 1–2.

[21] *Id.* at 2.

[22] *Federal Roe* Settlement Agreement – No. 3:14-cv-03616-LB, ECF No. 126; *Federal Roe* Pls. Mot. for Prelim. Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 127.

[23] *Federal Roe* Settlement Agreement – No. 3:14-cv-03616-LB, ECF No. 126 at 5–6 (¶ 17); *Federal Roe* Settlement Agreement Ex. B – No. 3:14-cv-03616-LB, ECF No. 126 at 73, 75–76.

[24] *Federal Roe* Settlement Agreement Ex. B – No. 3:14-cv-03616-LB, ECF No. 126 at 73.

[25] *Federal Roe* Hughes et al. Objs. to Proposed Settlement – No. 3:14-cv-03616-LB, ECF No. 133.

[26] *Federal Roe* Minute Entry – No. 3:14-cv-03616-LB, ECF No. 149; *Federal Roe* Prelim. Approval Hr'g Tr. – No. 3:14-cv-03616-LB, ECF No. 156.

[27] *Federal Roe* Order Preliminarily Approving Settlement – No. 3:14-cv-03616-LB, ECF No. 151.

Mses. Hughes, Hermes, Nunez, Pera, Vidal, and Zoumer, along with Diana Tejada, opted out of the *Federal Roe* class.[28] Ms. Murphy and Ms. Mehraban, along with Dora Marchand, did not opt out of the class.[29]

In July 2017, Mses. Murphy, Mehraban, and Locke filed objections to the proposed *Federal Roe* settlement.[30] In August 2017, Jane Roes 1 and 3 moved for final approval of the settlement.[31] Mses. Murphy, Mehraban, and Locke filed an opposition to the motion.[32] Jane Roes 1 and 3 filed a reply in support of the settlement.[33] SFBSC Management also filed a separate reply in support of the settlement.[34] With leave of the court, Mses. Murphy, Mehraban, and Locke filed a sur-reply opposing the settlement.[35]

In September 2017, the court held an additional hearing with the *Federal Roe* parties and objectors.[36] Following the hearing, the court approved the settlement and overruled objections thereto. *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2017 WL 4073809 (N.D. Cal. Sept. 14, 2017) (*Federal Roe V*), *appeal docketed sub nom. Murphy v. SFBSC Mgmt., LLC*, No. 17-17079 (9th Cir. Oct. 16, 2017).

In October 2017, Mses. Murphy, Mehraban, and Locke filed an appeal of the court's order approving the *Federal Roe* settlement. That appeal remains pending before the Ninth Circuit.

---

[28] Joint Chart of Wage-and-Hour Class- or Collective-Action Claims Against S.A.W. Entm't, Ltd., Gold Club – S.F., LLC, or SFBSC Mgmt. – No. 3:16-cv-03371-LB, ECF No. 147 at 5–6.

[29] *Id.* at 6–7.

[30] *Federal Roe* Murphy et al. Objs. to Settlement – No. 3:16-cv-03371-LB, ECF No. 162.

[31] *Federal Roe* Pls. Mot. for Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 163.

[32] *Federal Roe* Murphy et al. Opp'n to Mot. for Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 165.

[33] *Federal Roe* Pls. Reply in Supp. of Mot. for Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 167.

[34] *Federal Roe* Def. Reply in Supp. of Mot. for Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 168.

[35] *Federal Roe* Murphy et al. Sur-Reply in Opp'n to Mot. for Approval of Settlement – No. 3:14-cv-03616-LB, ECF No. 176.

[36] *Federal Roe* Minute Entry – No. 3:14-cv-03616-LB, ECF No. 177; *Federal Roe* Final Approval Hr'g Tr. – No. 3:14-cv-03616-LB, ECF No. 182.

## 2. The *Hughes* and *Pera* Actions

In June 2016, plaintiff Nicole Hughes filed the *Hughes* action against S.A.W. Entertainment.[37] In October 2016, Ms. Hughes, joined by named plaintiffs Angelynn Hermes and Penny Nunez, filed a First Amended Complaint against S.A.W. Entertainment and Gold Club.[38] In December 2016, Mses. Hughes, Hermes, and Nunez filed a Second Amended Complaint against S.A.W. Entertainment and Gold Club.[39] In January 2017, plaintiffs Elana Pera and Sarah Murphy filed the *Pera* action against S.A.W. Entertainment.[40]

Following various procedural issues involving the interplay of the *Hughes* and *Pera* actions with the *Federal Roe* action, in October and November 2017, the defendants moved to compel the *Hughes* and *Pera* plaintiffs to submit their claims to arbitration.[41] The defendants also moved to dismiss or stay the *Hughes* and *Pera* actions on the ground that they were subsumed in *Federal Roe*.[42] The plaintiffs filed oppositions to the motions.[43] In opposing the defendants' motions to compel arbitration, the plaintiffs argued that (among other things) the defendants had made use of a judicial process (as opposed to arbitration) in *Federal Roe* to obtain a class-wide release of

---

[37] *Hughes* Compl. – No. 3:16-cv-03371-LB, ECF No. 2.

[38] *Hughes* First Amend. Compl. ("FAC") – No. 3:16-cv-03371-LB, ECF No. 32.

[39] *Hughes* Second Amend. Compl. ("SAC") – No. 3:16-cv-03371-LB, ECF No. 66.

[40] *Pera* Compl. – No. 3:17-cv-00138-LB, ECF No. 1.

[41] *Hughes* Defs. Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 87; *Hughes* Defs. Mot. to Compel Arb. re Marchand – No. 3:16-cv-03371-LB, ECF No. 91; *Pera* Def. Mot. to Compel Arb. – No. 3:17-cv-00138-LB, ECF No. 28. The defendants had moved to compel the *Hughes* plaintiffs to arbitration in October 2016, *Hughes* Defs. Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 27, but withdrew that motion.

[42] *Hughes* Defs. Mot. to Dismiss – No. 3:16-cv-03371-LB – ECF No. 88; *Pera* Def. Mot. to Dismiss – No. 3:17-cv-00138-LB – ECF No. 26. The defendants had moved to dismiss the *Hughes* action in November 2016, *Hughes* Defs. Mot. to Dismiss – No. 3:16-cv-03371-LB – ECF No. 44, but the motion was mooted by a subsequent amended complaint.

[43] *Hughes* Pls. Opp'n to Motion to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 93; *Hughes* Pls. Opp'n to Motion to Compel Arb. re Marchand – No. 3:16-cv-03371-LB, ECF No. 96; *Pera* Pls. Opp'n to Motion to Compel Arb. – No. 3:17-cv-00138-LB, ECF No. 30; *Hughes* Pls. Opp'n to Mot. to Dismiss – No. 3:16-cv-03371-LB, ECF No. 92; *Pera* Pls. Opp'n to Mot. to Dismiss – No. 3:17-cv-00138-LB, ECF No. 31.

claims and thus had waived their right to compel the *Hughes* and *Pera* plaintiffs to arbitrate.[44] The

plaintiffs also argued that the arbitration provisions that the defendants invoked were

unenforceable as unconscionable, arguing that the court had already held similar arbitration

provisions to be unconscionable in *Federal Roe*.[45]

In August 2018,[46] the court granted the defendants' motions to compel arbitration. *Hughes II*,

2018 WL 4109100. The court first held that "[t]he fact that the defendants reached a settlement in

court, not in arbitration, in the related [*Federal Roe*] case — which they did only after [SFBSC

Management] first tried to compel arbitration and lost that fight — does not constitute a waiver of

their arbitration rights in [the *Hughes* and *Pera*] actions." *Hughes v. S.A.W. Entm't, Ltd.*, No. 16-

cv-03371-LB, 2017 WL 6450485, at *4 (N.D. Cal. Dec. 18, 2017) (*Hughes I*), *cited by Hughes II*,

2018 WL 4109100, at *2. "'To hold that a defendant waives its right to compel arbitration in one

case by entering a judicial settlement in another case would create a disincentive to settle for any

defendant facing multiple suits. Such an outcome is to be avoided.'" *Id.* (quoting *Lawrence v.

Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2003)), *cited by Hughes II*,

2018 WL 4109100, at *2.

The court next held that the arbitration provisions were not unconscionable, citing *Poublon v.

C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) and *Mohamed v. Uber Technologies, Inc.*, 848

F.3d 1201 (9th Cir. 2016). *Hughes II*, 2018 WL 4109100, at *3–5. Among other things, the court

noted that it had held the *Federal Roe* arbitration provisions were unconscionable in part because

they required the plaintiffs to pay half of all arbitration costs and fees and subjected them to a

potential fee-shifting claim if they were to lose their arbitrations. *Id.* at *4 (citing *Federal Roe I*,

2015 WL 930683, at *11). In *Hughes* and *Pera*, by contrast, the defendants committed to paying

all arbitration costs and fees and forgoing any claim against the plaintiffs for costs or attorney's

---

[44] *Hughes* Pls. Opp'n to Motion to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 93 at 7 & n.1, 16–18; *Pera* Pls. Opp'n to Mot. to Compel Arb. – No. 3:17-cv-00138-LB, ECF No. 30 at 3.

[45] *Hughes* Pls. Opp'n to Motion to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 93 at 7–8, 20–30; *Pera* Pls. Opp'n to Mot. to Compel Arb. – No. 3:17-cv-00138-LB, ECF No. 30 at 2.

[46] The court deferred ruling on the motions to compel arbitration until the Supreme Court issued its decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

fees. *Id.* The court observed that the Ninth Circuit had indicated in *Mohamed* (a decision issued after the court's original *Federal Roe* arbitration decision) that an employer may take an arbitration agreement that was unconscionable as drafted because it requires an employee to bear half the cost of arbitration and render it non-unconscionable by agreeing later to bear the full cost of arbitration — which is what the defendants did here. *Id.* (citing *Mohamed*, 848 F.3d at 1212).

The court ordered that named plaintiffs Nicole Hughes, Angelynn Hermes, Penny Nunez, Elana Pera, and Sarah Murphy and opt-in plaintiff Dora Marchand had to submit all claims other than PAGA claims to arbitration. *Id.* at *5. The court stayed each plaintiff's PAGA claims (if any) while that plaintiff's arbitration remained pending. *Id.* Because all named plaintiffs had to submit all claims other than PAGA claims to arbitration, leaving no named plaintiffs to actively pursue the litigation, the court terminated without deciding the defendants' motions to dismiss. The court extended the plaintiffs 21 days to file a motion to amend their complaint to add a new named plaintiff or plaintiffs who had not signed an arbitration agreement with the defendants. *Id.*

The court did not expressly address whether then-opt-in plaintiff Diana Tejada or opt-in plaintiffs Poohrawn Mehraban, Gypsy Vidal, or Tiffany Zoumer had to submit their claims to arbitration. *See id.*

In November 2018, the *Hughes* plaintiffs filed a Third Amended Complaint.[47] The Third Amended Complaint added Ms. Tejada, who previously had been an opt-in plaintiff, as a new named plaintiff. The Third Amended Complaint also added SFBSC Management as a defendant (in addition to S.A.W. Entertainment and Gold Club).

**3. The *State Roe* Action**

In May 2018, four exotic dancers filed a putative class and collective action against numerous defendants, including S.A.W. Entertainment and Gold Club (but not SFBSC Management), before the California Superior Court for San Diego County: *Roe v. Deja Vu Services, Inc.*, No. 37-2018-

---

[47] *Hughes* TAC – No. 3:16-cv-03371-LB, ECF No. 133.

00028044-CU-OE-CTL (Cal. Super. Ct. San Diego Cty. filed May 31, 2018).[48] The Superior Court allowed the dancers to remain anonymous under the pseudonyms "Jane Roe 1" through "Jane Roe 4."

In October 2018, the *State Roe* plaintiffs announced that they had reached a class settlement and filed a motion for preliminary approval of the settlement.[49] One week later, the *State Roe* defendants moved to compel the *State Roe* plaintiffs to submit their claims to arbitration.[50] The *State Roe* defendants noted that they had reached a settlement with the *State Roe* plaintiffs and said that they were filing their motion to compel arbitration "to avoid a waiver of their right to enforce the arbitration provisions and class action waivers agreed to by Roes 1 through 4 in the unlikely event the settlement of the Action is not approved by the court."[51]

In November 2018, Elana Pera, Penny Nunez, Sarah Murphy, Poohrawn Mehraban, Nicole Hughes, Angelynn Hermes, and Gypsy Vidal moved to intervene in *State Roe*.[52] The proposed Intervenors also filed a motion opposing the proposed *State Roe* settlement.[53] The *State Roe* plaintiffs filed oppositions to the proposed Intervenors' motion to intervene and to their opposition to the settlement.[54] The *State Roe* defendants filed separate oppositions to the proposed Intervenors' motion to intervene and to their opposition to the settlement.[55] The *State Roe*

---

[48] *State Roe* Compl. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-1.

[49] *State Roe* Pls. Mot. for Prelim. Approval of Settlement – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-5; *State Roe* Settlement Agreement – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-7 at 43–354.

[50] *State Roe* Defs. Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-10.

[51] *State Roe* Defs. Mem. of Law in Supp. of Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-11 at 3.

[52] *State Roe* Pera et al. Mot. to Intervene – No 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-15.

[53] *State Roe* Pera et al. Opp'n to Mot. for Prelim. Approval of Settlement – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-17.

[54] *State Roe* Pls. Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-22; *State Roe* Pls. Resp. to Opp'n to Mot. for Prelim. Approval of Settlement – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-32.

[55] *State Roe* Defs. Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-24; *State Roe* Defs. Resp. to Pera et al. Opp'n to Mot. for Prelim. Approval of Settlement – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-33.

United States District Court
Northern District of California

plaintiffs and the *State Roe* defendants both argued that allowing the Intervenors to intervene and file their own complaint in *State Roe* would circumvent this court's August 2018 order compelling them to submit their claims to arbitration.[56]

The Superior Court denied without prejudice the *State Roe* plaintiffs' motion for preliminary approval of the parties' settlement.[57] The Superior Court also granted the proposed Intervenors' motion to intervene and allowed them to file a complaint in intervention.[58] In granting the motion to intervene, the Superior Court wrote that "[n]aturally, nothing herein precludes defendants from seeking an order from the federal court enjoining this court from proceeding further."[59]

Following the Superior Court's leave to intervene, in December 2018, the Intervenors (i.e., Mses. Pera, Nunez, Murphy, Mehraban, Hughes, Hermes, and Vidal) filed a complaint in intervention against S.A.W. Entertainment, Gold Club, and SFBSC Management.[60] (SFBSC Management previously had not been a defendant in *State Roe*.) In January 2019, the Intervenors filed a First Amended Complaint in Intervention, adding a new named plaintiff, Rashele Hamren.[61]

After the Superior Court's denial of the motion for preliminary approval of the settlement, the original *State Roe* plaintiffs opposed the *State Roe* defendants' October 2018 motion to compel

---

[56] *State Roe* Pls. Suppl. Br. in Supp. of Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-45 at 7 ("[T]he Proposed Interveners cannot circumvent arbitration order by a federal court, by filing a class action complaint in this Court."); *State Roe* Defs. Suppl Br. in Supp. of Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-46 at 8 ("To allow the Proposed Intervenors to intervene here on the basis that they 'seek to represent' other class members' interests would essentially nullify the District Court's Order compelling arbitration on their individual claims.").

[57] *State Roe* Order Denying Pls. Mot. for Prelim. Approval of Settlement and Tentatively Granting Pera et al. Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-43.

[58] *State Roe* Order Granting Pera et al. Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-47.

[59] *Id.* at 4 (citing *State Roe* Pls. Suppl. Br. in Supp. of Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-45 at 7; *State Roe* Defs. Suppl Br. in Supp. of Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-46 at 8).

[60] *State Roe* Pera et al. Compl. in Intervention – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-48.

[61] *State Roe* Pera et al. FAC in Intervention – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-53.

arbitration.[62] The original *State Roe* defendants filed a reply in support of their motion to compel arbitration.[63] The Intervenors did not file any briefing relating to the motion to compel arbitration.

The Superior Court denied the *State Roe* defendants' motion to compel arbitration, writing

> defendants waived the right to arbitrate by joining with [the plaintiffs] in actively seeking the court's imprimatur on a class-wide settlement, and by vigorously opposing the participation of the intervenors. Although it is true the defendants filed their motion as a protective measure while the motion for preliminary settlement approval was pending, the court is of the view that defendants' conduct after that motion was filed was inconsistent with the intention to arbitrate. Some defendants, faced with a similar situation, will stand by quietly and passively allow plaintiff's counsel to seek preliminary approval. That is not what happened here. Defendants actively sought to utilize the mechanisms of the court when it suited their purpose, and must be held to that election. The court finds the criteria of *St. Agnes Med. Ctr.* [*v. PacifiCare of Cal.*, 31 Cal. 4th 1187 (2003)], are met. Thus, the court finds there is clear and convincing evidence of waiver by conduct. Accordingly, the motion to compel arbitration is denied.[64]

The Superior Court did not address expressly whether it was holding that the *State Roe* defendants waived their right to arbitration with respect to the original *State Roe* plaintiffs, the Intervenors, or both.[65]

Ten days after the Superior Court issued its order denying the motion to compel arbitration, SFBSC Management — which had been newly named as a defendant only in the complaint in intervention — filed a notice of removal and removed *State Roe* to the U.S. District Court for the Southern District of California.[66]

Following removal, the original *State Roe* defendants and SFBSC Management filed a motion for reconsideration of the Superior Court's decision denying the original *State Roe* defendants'

---

[62] *State Roe* Pls. Opp'n to Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-49.

[63] *State Roe* Defs. Reply in Supp. of Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-50.

[64] *State Roe* Order Denying Defs. Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-52 at 4.

[65] *See id.*

[66] *State Roe* Notice of Removal – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1.

motion to compel arbitration.[67] In the alternative, they asked the court to clarify that the Superior Court's decision denying their motion to compel arbitration applied (1) only to the original *State Roe* plaintiffs and not the Intervenors, (2) only to the original *State Roe* defendants and not SFBSC Management, and (3) only to the *State Roe* action and not other actions pending elsewhere.[68] The original *State Roe* defendants and SFBSC Management also filed a motion to compel the Intervenors to submit their claims to arbitration.[69] The Intervenors, for their part, moved to remand *State Roe* to the Superior Court.[70] The Southern District vacated the hearing and briefing on the defendants' motions pending a ruling on the motion to remand.[71]

On April 29, 2019, the Southern District denied the Intervenors' motion to remand and, on its own initiative, issued an order for the parties to show cause why *State Roe* (now squarely a federal action) should not be transferred to this court. *Roe v. D[e]ja Vu Servs., Inc.*, No. 19cv0196 DMS (KSC), 2019 WL 1895575 (S.D. Cal. Apr. 29, 2019). The *State Roe* parties' deadline to file their responses is May 10, 2019.

### 4. The *Hughes* and *Pera* Parties' Discussions Regarding Arbitration

The record is unclear about whether the parties had any discussions about arbitration between August 2018, when the court issued its arbitration order, and December 2018.

On December 17, 2018, counsel for the plaintiffs filed arbitration demands with the American Arbitration Association ("AAA"), but only with respect to Nicole Hughes and Poohrawn Mehraban (and not the other Round 1 Plaintiffs subject to the court's August 2018 arbitration order) and only with respect to their individual claims for unlawful retaliation (and not their other

---

[67] *State Roe* Defs. Mot. for Recons. of Order Denying Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 7.

[68] *State Roe* Defs. Mem. of Law in Supp. of Mot. for Recons. of Order Denying Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 7-1 at 6, 21–22.

[69] *State Roe* Defs. Mot. to Compel Arb. re Pera, Nunez, Murphy, Mehraban, Hughes, Hermes, Vidal, and Hamren – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 8.

[70] *State Roe* Pera et al. Mot. to Remand – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 11.

[71] *State Roe* Scheduling Order – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 12.

claims).[72] That same day, counsel for the plaintiffs asked the counsel for defendants, "For these arbitrations only, please let us know if you agree to use AAA. Also let us know if, as we discussed before, we can consolidate these two arbitrations."[73]

On December 23, 2018, counsel for the defendants responded:

> Sorry for not getting back to you sooner. Our client contact was out of the country. He has returned and we are conferring about your proposal to utilize AAA for the Hughes and Mehraban arbitrations. We will get back to you as soon as possible. With the holidays, however, we may not have an answer until after the New Year. Until then, we are amenable to AAA holding these cases open for an additional two weeks — i.e., until January 10.[74]

On January 17, 2019, counsel for the defendants wrote:

> After conferring with our clients, we are not amenable to using AAA as the ADR provider for arbitration of the plaintiffs' claims in *Hughes*, *Pera*, or *Mehraban*. We are, however, open to using JAMS and/or ADR Services.
>
> With respect to consolidation of claims, you have, at this phase, attempted to initiate arbitration as to only Nicole Hughes and Poohrawn Mehraban. Hughes and Mehraban performed at different clubs and under different management. As such, we do not believe it makes sense to consolidate their claims.
>
> Our clients are, however, agreeable to consolidating the arbitration proceedings on a club-by-club basis. That is, our clients are willing to proceed with three separate, consolidated arbitration hearings on all of the *Pera* plaintiffs' claims against Condor, all of the *Hughes* plaintiffs' claims against Hustler Club (to the extent the plaintiffs performed at Hustler Club), and all of the *Hughes* plaintiffs' claims against Gold Club (to the extend the plaintiffs performed at Gold Club).
>
> Of course, to fully realize the efficiencies and benefits associated with consolidation, we would need to proceed with arbitration of all your clients' claims against each respective club together and at the same time, rather than on a piece-meal basis.
>
> If we consolidate the cases into three separate proceedings against each club, we will need select three arbitrators. If you are agreeable to moving forward as

---

[72] Melton Decl. – No. 3:16-03371-LB, ECF No. 152-2 at 4 (¶ 12).

[73] Email from Shannon Liss-Riordan to Douglas Melton and Shane Cahill (Dec. 17, 2018) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 172.

[74] Email from Shane Cahill to Shannon Liss-Riordan and Douglas Melton (Dec. 23, 2018) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 171.

proposed, please provide us your proposed list of arbitrators and we will discuss them with our clients.[75]

On January 24, 2019, counsel for the plaintiffs wrote:

Attached are arbitration demands we have filed now with JAMS for the retaliation claims for Nicole Hughes and Poohrawn Mehraban. For arbitrators, how about Michael Loeb and Abbie Silverman-Weiss?

As for the other plaintiffs we represent, Judge Taylor in San Diego has ruled that your clients waived arbitration and thus we intend to proceed with their claims in court.[76]

On February 5, 2019, JAMS emailed counsel for the plaintiffs an invoice for the arbitration filing fee.[77] Counsel for the plaintiff responded, "Our client is not able to pay this fee. My understanding is that Respondents have agreed to pay all arbitration fees. I am copying Respondent's counsel here."[78]

On February 14, 2019, JAMS emailed counsel for both the plaintiffs and the defendants, writing "Please advise if an agreement has been reached regarding the Respondent paying the arbitration fees required to move the arbitration forward."[79]

On February 20, 2019, counsel for the defendants wrote to counsel for the plaintiffs:

With respect to arbitration, we stand ready to proceed to arbitration as to all claims Judge Beeler ordered the parties to arbitrate in her August 29, 2018 order. We disagree that Judge Taylor's order in the San Diego action in any way affects Judge Beeler's order or Defendants' arbitration rights in this case. And you have provided no authorities for the proposition that a state court judge's order in one case operates to vacate or reverse a federal court judge's order in a different case.

---

[75] Email from Shane Cahill to Shannon Liss-Riordan (Jan. 17, 2019) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 170–71.

[76] Email from Shannon Liss-Riordan to Shane Cahill (Jan. 24, 2019) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 170.

[77] Email from JAMS to Shannon Liss-Riordan (Feb. 5, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 15–16.

[78] Email from Shannon Liss-Riordan to JAMS (Feb. 5, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 14–15.

[79] Email from JAMS to Shannon Liss-Riordan and Douglas Melton (Feb. 14, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 14.

1
2
3
4

Judge Beeler's August 29, 2018 order is clear — your clients must submit all their claims (with the exception of their PAGA claims), to individual arbitration. As such, we are not willing to arbitrate your clients' claims on a piece-meal basis (i.e., proceed to arbitration as to Hughes' and Mehraban's individual retaliation claims only). To do so would be costly, inefficient, result in potentially conflicting rulings, and would run contrary to Judge Beeler's order.

5
6
7

Given your position, we intend to file a motion asking Judge Beeler to enforce her August 29, 2018 order under her contempt powers and/or inherent authority to compel compliance therewith. We will further request that plaintiffs be enjoined from participating in any class or representative action in violation of Judge Beeler's order. If Plaintiffs are willing to reconsider their position, please advise.[80]

8

On February 21, 2019, counsel for the plaintiffs wrote:

9
10
11

Judge Taylor's decision that your clients have waived arbitration is more recent than Judge Beeler's decision and is based on activity that occurred after her decision. Thus, as indicated in the chart of cases we submitted, we will ask her to revise her earlier decision that arbitration has not been waived, for which she should defer to the state court.[81]

12

13
14
15
16

On February 28, 2019, JAMS emailed counsel for both the plaintiffs and the defendants, writing "Please advise if an agreement has been reached regarding the Respondent paying the arbitration fees required to move the arbitration forward. I look forward to hearing from you shortly."[82]

17
18
19

On March 14, 2019, JAMS emailed counsel for both the plaintiffs and defendants, writing "We will be unable to proceed with the administration of this case until the Filing Fee has been received. Please advise as to when we can expect to receive same."[83]

20

Counsel for the defendants responded to JAMS, copying counsel for the plaintiffs:

21
22

Please pardon our delay in responding. Disputes have arisen between the parties regarding the scope of the District Court's order compelling arbitration of the

23
24

[80] Email from Shane Cahill to Shannon Liss-Riordan (Feb. 20, 2019) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 175.

25

[81] Email from Shannon Liss-Riordan to Shane Cahill (Feb. 21, 2019) – No. 3:16-cv-03371-LB, ECF No. 152-2 at 175.

26

[82] Email from JAMS to Shannon Liss-Riordan and Douglas Melton (Feb. 28, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 7.

27

[83] Email from JAMS to Shannon Liss-Riordan and Douglas Melton (Mar. 14, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 6–7.

28

above-captioned matter, which have required the parties to file further motions with the Court. The motions are currently set for hearing on April 4, 2019 (although the parties are working on a stipulation to continue the hearing until April 18, 2019). It would be inefficient and potentially prejudicial to one or more parties if the arbitration process were to commence before the disputes regarding the scope of the arbitration order have been fully resolved.

Again, sorry for our slow response. We will keep JAMS apprised of the results of the parties['] motions. In the meantime, please let us know if you have any questions or concerns.[84]

Counsel for the plaintiffs responded to JAMS, copying counsel for the defendants:

We disagree. Claimant has been trying to pursue this retaliation claim for some time, and there is no reason to await resolution of the arbitrability of other claims in court before she is allowed to proceed on this retaliation claim. Claimant filed her demand and has been ready to proceed but has been prevented from doing so by Respondents' failure to cooperate with the process.

We consider Respondents' refusal to pay the filing fees to be a waiver of Respondents' ability to submit these claims to arbitration.[85]

On March 26, 2019, counsel for the defendants wrote to counsel for the plaintiffs, copying JAMS:

Defendants are prepared, as always, to arbitrate the full scope of your clients' claims Judge Beeler ordered to arbitration in the *Hughes* and *Pera* cases, including Hughes' and Mehraban's retaliation claims. We attempted to make this clear in our email in response to the arbitration demands Hughes and Mehraban filed with AAA in December 2018 as to their retaliation claims only. Your March 14 email to JAMS, and the arguments set forth in your motion for reconsideration, suggest you may not have understood our clients' position.

As you will recall, after we advised you on January 17 that our clients were willing to proceed to arbitration on all your clients' claims before JAMS or ADR Services, you responded on January 24 that your clients intended to proceed with all but Hughes' and Mehraban's retaliation claims "in court." (Your email followed Judge Taylor's order in the San Diego lawsuit in which he found that the defendants in

---

[84] Email from Douglas Melton to JAMS (Mar. 14, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 5–6.

[85] Email from Shannon Liss-Riordan to Douglas Melton and JAMS (Mar. 14, 2019) – No. 3:16-cv-03371-LB, ECF No. 156-1 at 5.

that case had waived their right to compel the claims of the plaintiffs in that case to arbitration.)

After your statement of your clients' intent to pursue nearly all their claims "in court," we received correspondence from JAMS on February 5 advising that Hughes and Mehraban had submitted arbitration demands as to their retaliation claims and requesting the filing fees. Again, your clients' position was clear — they were not going to submit the vast majority of their claims to arbitration (indeed, the *Pera* plaintiffs have still never submitted a demand for arbitration).

On February 20, we again advised that the Defendants in *Hughes* and *Pera* stood "ready to proceed to arbitration as to all claims Judge Beeler ordered to arbitration in her August 29, 2018 order." You responded on February 21 that you intended to ask that Judge Beeler "revise her earlier decision" based on Judge Taylor's subsequent order in the San Diego lawsuit.

Accordingly, after the Defendants filed their motions to enforce Judge Beeler's arbitration order and after Plaintiffs made clear they would be filing a motion for reconsideration, we advised JAMS on March 14 that a dispute had arisen regarding the scope of Judge Beeler's arbitration orders. You responded that you "disagree[d]" and that your clients had been trying to pursue their retaliation claims for some time and that there was no reason to await resolution of the arbitrability of other claims in court before your clients were allowed to proceed on their retaliation claims.

While the parties' recent filings with Judge Beeler amply demonstrate that the parties do, indeed, dispute the scope of Judge Beeler's arbitration orders, we are open to a telephonic or in-person conference if that process might at least narrow the parties' disagreements. For example, in your motion for reconsideration you suggest it might be better for the parties to submit to the arbitrator the question of whether Judge Beeler's order requires the plaintiffs to arbitrate all their claims (except PAGA claims, if any) or just their retaliation claims. We agree that might be an appropriate alternative, which would potentially narrow the issues for Judge Beeler to decide.

On a related topic, you misconstrue the issue of Defendants' payment of the $1,500 filing fees. Please be advised that Defendants' deferral of payment of those fees was not intended to send the message that Defendants refuse to pay those fees. (And the facts here bear no resemblance to the facts of the waiver cases cited in your motion for reconsideration.) But in a further effort to narrow the issues in dispute, we will pay the JAMS filing fees tomorrow. We will also provide JAMS with a copy of the operative complaints in *Hughes* and *Pera*, along with Judge Beeler's August 2018 arbitration order, so JAMS is prepared to expand the scope of the proceedings, as appropriate, consistent with Judge Beeler's orders. (We are copying Kathleen Hanley of JAMS on this email so JAMS is in the loop.)

Please let us know if you would like to schedule a call or meeting about the logistics of the arbitration proceedings and related issues. If yes, it probably makes

sense to do so this week or next so we are able to report any agreements we reach in advance of the hearing on the 18th.

Thanks in advance and hope all's well with you.[86]

Counsel for the plaintiffs responded:

We want to proceed with the retaliation claims for Ms. Hughes and Ms. Mehraban. Thank you for agreeing to pay the arbitration fees tomorrow so that we can get started with those claims. As we have stated repeatedly, we believe their other claims should proceed in court and so they are not waiving any argument that those other claims should proceed in court. So we look forward to getting started with their retaliation claims and perhaps it will get sorted out along the way which claims will proceed in arbitration for them. Although Judge Beeler ordered the other claims to arbitration, as you know, we have moved for reconsideration of that ruling and intend to appeal if the other claims are ultimately compelled to arbitration. But none of that should stop our proceeding with arbitrating the retaliation claims. Please let me know, as we raised earlier, whether your clients are interested in consolidating these two retaliation cases and if they want to try to agree on an arbitrator or arbitrators for them. I might have offered up some suggestions already. I'm available to talk on Friday if we should discuss by phone.[87]

On March 27, 2019, the defendants paid JAMS the arbitration filing fee.[88] Counsel for the plaintiffs and the defendants had further discussions,[89] but apparently were unable to reach a resolution regarding arbitration.

---

[86] Email from Douglas Melton to Shannon Liss-Riordan (Mar. 26, 2019) – No. 3:16-cv-03371-LB, ECF No. 164-1 at 22–23.

[87] Email from Shannon Liss-Riordan to Douglas Melton (Mar. 26, 2019) – No. 3:16-cv-03371-LB, ECF No. 164-1 at 21–22.

[88] Melton Decl. – No. 3:16-cv-03371-LB, ECF No. 164-1 at 3 (¶ 10).

[89] *See* Email from Shannon Liss-Riordan to Douglas Melton (Mar. 26, 2019) – No. 3:16-cv-03371-LB, ECF No. 164-1 at 20.

**REFERENCE CHART OF PLAINTIFFS' STATUSES**

| Name | *Hughes / Pera* | *State Roe* | Expressly referenced in August 2018 arbitration order? |
|---|---|---|---|
| Angelynn Hermes | named plaintiff | intervenor | yes |
| Nicole Hughes | named plaintiff | intervenor | yes |
| Dora Marchand | opt-in plaintiff | not an intervenor | yes |
| Poohrawn Mehraban | opt-in plaintiff | intervenor | no |
| Sarah Murphy | named plaintiff | intervenor | yes |
| Penny Nunez | named plaintiff | intervenor | yes |
| Elana Pera | named plaintiff | intervenor | yes |
| Diana Tejada | named plaintiff | not an intervenor | no |
| Gypsy Vidal | opt-in plaintiff | intervenor | no |
| Tiffany Zoumer | opt-in plaintiff | not an intervenor | no |

# ANALYSIS

**1. The Round 1 Plaintiffs Must Submit All Claims (Other Than PAGA Claims) Against S.A.W. Entertainment and Gold Club to Arbitration**

**1.1    The Court Grants the Motions to Enforce the August 2018 Arbitration Order**

**1.1.1    Governing law**

"Absent a stay, 'all orders and judgments of courts must be complied with promptly.'"

*Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1984) (quoting *Maness v. Meyers*, 419 U.S.

449, 458 (1975)). "Disregard of [a court] order would undermine the court's ability to control its

docket . . . and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 610 (9th Cir. 1992).

If parties believe that a court order should be modified or vacated based on new factual

developments or an intervening change in the law, the proper avenue is for them to move the

issuing court to stay or reconsider its order (or to appeal the order and move the appellate court for a stay pending the appeal). *Cf. Kraft v. Oldcastle Precast, Inc.*, No. 18-cv-03036-LB, 2018 WL 3777563, at *3 (N.D. Cal. Aug. 9, 2018) ("'Unless a stay or reversal is obtained, a party must comply with a court order, even if he believes that the order is erroneous or contrary to law.'") (internal brackets omitted) (quoting *Guardian Life Ins. Co. of Am. v. Andraos*, No. CV 07-5732 SJO (FMOx), 2009 WL 10675048, at *3 (C.D. Cal. Feb. 10, 2009)); *see also In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2011 WL 736868, at *4 (N.D. Cal. Feb. 22, 2011) ("[An a]rgument that 'a party itself may stay an order merely by filing a motion for reconsideration is plainly frivolous. A court's order remains in force until it is vacated or stayed, and a party disregards such an order at its peril.'") (internal ellipsis omitted) (quoting *New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, No. 99 Civ. 2436 DLC, 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000)).

### 1.1.2    Application

In August 2018, this court ordered the Round 1 Plaintiffs — Nicole Hughes, Angelynn Hermes, Penny Nunez, Elana Pera, Sarah Murphy, and Dora Marchand — to submit all claims other than PAGA claims to binding arbitration. *Hughes II*, 2018 WL 4109100, at *5. Absent this court's (or the Ninth Circuit's) staying or vacating that order, the Round 1 Plaintiffs must comply with it.

The plaintiffs make several arguments why they should not be compelled to submit their claims to arbitration. None excuses their failure to comply with the court's August 2018 arbitration order.

First, the plaintiffs claim that they were "dragged into [*State Roe*] by Defendants in order to protect their rights and prevent a release of their claims[.]"[90] That is not so. Even assuming that

---

[90] *Hughes* Pls. Opp'n to Mot. to Enforce Arb. Order – No. 3:16-cv-03371-LB, ECF No. 156 at 6; *accord Pera* Pls. Opp'n to Mot. to Enforce Arb. Order – No. 3:17-cv-00138-LB, ECF No. 77 (incorporating by reference the *Hughes* plaintiffs' opposition).

these plaintiffs were part of the proposed *State Roe* settlement class,[91] they could have protected

their rights and prevented a release of their claims by opting out of settlement. *Cf. Edwards v.*

*Heartland Payment Sys., Inc.*, 29 Cal. App. 5th 725, 733 (2018) ("Despite all of the [intervenors]'

various arguments, they truly only seek one goal — to challenge the adequacy of the settlement[.]

If they are unhappy with the settlement, they can opt out and fully preserve their causes of

action."). These plaintiffs chose to litigate in *State Roe* instead of complying with the court's order

to arbitrate their claims.[92]

Second, the plaintiffs contend that the court's August 2018 arbitration order, which held that

the defendants did not waive their right to arbitration through their conduct in *Hughes*, *Pera*, and

*Federal Roe*, was superseded by the Superior Court's subsequent order that the defendants waived

arbitration by their conduct in *State Roe*, and that the subsequent Superior Court order binds this

---

[91] The original *State Roe* plaintiffs and the *State Roe* defendants both dispute the contention that the *Hughes* and *Pera* plaintiffs are part of the *State Roe* settlement class. *State Roe* Pls. Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-22 at 4 ("The primary problem facing the Proposed Interveners is they are not class members under the [State] Roe proposed class action settlement."); *State Roe* Defs. Opp'n to Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-24 at 3 ("The bottom line is that not a single proposed intervenor worked during the putative class period in this case and therefore they have no claim against these defendants for the relief that is subject of the pending settlement."). The court does not need to resolve this issue to decide the pending motions.

[92] The Round 1 Plaintiffs claim that under the California Supreme Court's decision in *Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018), they had to intervene "in order to preserve their rights to object to the settlement and appeal any adverse decision regarding the merits of the settlement." *Hughes* Pls. Opp'n to Mot. to Enforce Arb. Order – No. 3:16-cv-03371-LB, ECF No. 156 at 6. That is not what *Hernandez* says. *Hernandez* confirms that in a California state-court class action, any class member — including non-intervening members — may object to a class settlement. *Hernandez*, 4 Cal. 5th at 265 (citing Cal. Rules of Ct. 3.769(f)). To appeal a class judgment, a class member must become a party of record to the litigation, which it may do either by (1) intervening or (2) filing a motion to set aside and vacate the class judgment under California Civil Procedure Code § 663. *Id.* at 267. It thus is not the case that these plaintiffs had to intervene in order to preserve their rights to object to the *State Roe* settlement or appeal any adverse decision. *Id.*; *accord Edwards*, 29 Cal. App. 5th at 734–35.

The court recognizes that the Superior Court allowed these plaintiffs to intervene in *State Roe* in an "exercise[ of] discretion." *State Roe* Order Granting Pera et al. Mot. to Intervene – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-47 at 3. The Superior Court did not hold that these plaintiffs were "dragged" into *State Roe* or were somehow compelled to intervene. *See id.* The Superior Court also held that nothing in its order granting intervention "precludes defendants from seeking an order from the federal court enjoining this court from proceeding further." *Id.* at 4.

court.[93] It does not. This court ordered the plaintiffs to submit their claims to arbitration (and did not merely find no waiver of the right to arbitrate). *Hughes II*, 2018 WL 4109100, at *5. The plaintiffs cite no authority that compels a conclusion that they can disregard that order. *Cf. Kraft*, 2018 WL 3777563, at *3 (N.D. Cal. Aug. 9, 2018) (parties must comply with court orders unless the orders are stayed or reversed); *In re Republic of Ecuador*, 2011 WL 736868, at *4 (same).

In sum, as the court ordered previously, the Round 1 Plaintiffs — Mses. Hughes, Hermes, Nunez, Pera, Murphy, and Marchand — must submit all claims other than PAGA claims to arbitration.[94] The court does not hold the plaintiffs in contempt or impose sanctions at this time.[95]

## 1.2 The Court Denies the Motion to Reconsider the August 2018 Arbitration Order

### 1.2.1 Governing law

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal brackets omitted) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Id.* (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

---

[93] *Hughes* Pls. Opp'n to Mot. to Enforce Arb. Order – No. 3:16-cv-03371-LB, ECF No. 156 at 15–16.

[94] While other plaintiffs brought PAGA claims in prior versions of the complaint, it appears that Ms. Hughes is the only plaintiff bringing a PAGA claim in the Third Amended Complaint. *Hughes* TAC – No. 3:16-cv-03371-LB, ECF No. 133 at 9 (Count VII header).

[95] The defendants ask the court to enjoin the plaintiffs from pursuing claims in *State Roe* (now pending in the Southern District of California) by ordering the plaintiffs to dismiss their complaint in intervention. *Hughes* Defs. Mem. of Law in Supp. of Mot. to Enforce Arb. Order– No. 3:16-cv-03771-LB, ECF No. 152-1 at 18. The court denies that request. That said, the court orders the plaintiffs to submit all non-PAGA claims to arbitration and expects that the plaintiffs will comport themselves in *State Roe* in a manner that complies with this court's order.

### 1.2.2 Application

The plaintiffs contend that the Superior Court's order — that the defendants waived arbitration by their conduct in *State Roe* — is a new development that warrants this court's reconsidering its August 2018 arbitration order. The court disagrees.

The plaintiffs first argue that the Superior Court's decision is binding on this court under the doctrine of collateral estoppel.[96] For a California state-court decision to be preclusive under the doctrine of collateral estoppel, "it must appear that the identical issue was actually litigated and necessarily decided in [the] prior proceeding." *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1520 (2008) (citations omitted). "Unless the issue or cause of action in the two actions is identical, the first judgment does not stand as a bar to the second suit." *Id.* (citations omitted). "If anything is left to conjecture as to what was necessarily involved and decided[,] there can be no collateral estoppel." *Id.* (citations and internal quotation marks and ellipsis omitted). "It must appear that the precise question was raised and determined in the former suit." *Id.* (citations and internal quotation marks, brackets, and ellipses omitted).

Whether the Superior Court held that the defendants waived their right to arbitration with respect to any parties other than the original *State Roe* plaintiffs is at best conjecture. The briefing before the Superior Court's order involved only the original *State Roe* plaintiffs, not the Intervenors or any other parties. The *State Roe* defendants' motion to compel arbitration was directed only at Jane Roes 1–4, and only Jane Roes 1–4 opposed the motion.[97] Nothing in the Superior Court's order addressed whether the *State Roe* defendants waived their right to arbitration with respect to the Intervenors or any other parties.[98] As "it [does not] appear that the

---

[96] *Hughes* Pls. Mem. of Law in Supp. of Mot. for Recons. – No. 3:16-cv-03371-LB, ECF No. 161-1 at 12–13.

[97] *State Roe* Defs. Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-10; *State Roe* Pls. Opp'n to Mot. to Compel Arb. – No. 3:19-cv-00196-DMS-KSC (S.D. Cal.), ECF No. 1-49.

[98] Similarly, nothing in the Superior Court's order addressed the precise question of whether the defendants waived their right to arbitrate with respect to all proceedings, or only the specific *State Roe* action before the Superior Court.

identical issue was actually litigated and necessarily decided" in *State Roe*, the collateral-estoppel doctrine does not apply. *Cf. Shopoff & Cavallo*, 167 Cal. App. 4th at 1520.

Moreover, the plaintiffs' argument — that the defendants waived their right to arbitrate with respect to the *Hughes* and *Pera* plaintiffs by their conduct in *State Roe* — is not persuasive. "'Waiver of a contractual right to arbitration is not favored,' and, therefore, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)); *accord St. Agnes*, 31 Cal. 4th at 1195 (same). "Specifically, 'a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" *Richards*, 744 F.3d at 1074 (quoting *Fisher*, 791 F.2d at 691); *accord St. Agnes*, 31 Cal. 4th at 1196 (taking into account similar factors). As courts have held, a defendant's attempt to settle a case with a plaintiff is not inconsistent with that defendant's right to arbitrate a separate case, even if the settlement is on a class basis (and overlaps the case that the defendant seeks to arbitrate).

The Central District of California addressed this situation in *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002). There, defendant DirecTV had been sued in a separate class action (*Brauer v. DirecTV, Inc.*), initially moved to compel the *Brauer* plaintiff to submit his claims to arbitration, and then withdrew its motion and agreed to a class settlement. *Id.* at 1112. The *Bischoff* plaintiffs brought their own class action and claimed that DirecTV had waived its right to compel them into arbitration, arguing that "DirecTV's desire to waive its right to arbitration in *Brauer* is an act that is 'overwhelmingly inconsistent with the assertion of that same right in this case.'" *Id.* at 1113. The Central District rejected that argument, holding that "to hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd." *Id.* Other courts have agreed and have observed that "for policy reasons, courts generally do not interpret a party's efforts to settle a case as waiving its right to compel arbitration. . . . To hold that a defendant waives its right to compel arbitration in one case by entering a judicial settlement in another case would create a disincentive to settle for any

defendant facing multiple suits. Such an outcome is to be avoided." *Lawrence*, 343 F. Supp. 2d at 1113 (defendant did not waive its right to arbitrate against plaintiffs by entering into a class settlement in a separate case, even where the class settlement overlapped plaintiffs' claims) (citing *Bischoff*, 180 F. Supp. 2d 1097, and other cases); *accord, e.g.*, *Carbajal v. Household Bank, FSB*, No. 00 C 0626, 2003 WL 22159473, at *11 (N.D. Ill. Sept. 18, 2003) (*Carbajal I*) (defendants did not waive their right to arbitrate against plaintiff by trying to enter a class settlement in separate cases, even where the class settlement overlapped plaintiff's claims), *aff'd sub nom. Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905 (7th Cir. 2004) (*Carbajal II*) (affirming that defendants' efforts to include plaintiff in the "master" class settlement did not waive the defendants' right to arbitrate).

This court similarly held in its August 2018 arbitration order that the defendants' efforts to settle *Federal Roe* on a class basis did not waive their right to arbitrate with respect to the *Hughes* and *Pera* plaintiffs. *Hughes I*, 2017 WL 6450485, at *4 (citing *Lawrence*, 343 F. Supp. 2d at 1113; *Bischoff*, 180 F. Supp. 2d at 1113); *Hughes II*, 2018 WL 4109100, at *2 (citing *Hughes I*, 2017 WL 6450485, at *4). The plaintiffs do not identify any intervening change in the controlling law that warrants reconsideration on this issue.[99] By extension of this reasoning, the defendants' efforts to settle *State Roe* on a class basis did not waive their right to arbitrate with respect to the *Hughes* and *Pera* plaintiffs.

The plaintiffs argue that the "Defendants' conduct [in *State Roe*] went far beyond the steps that a settling defendant would normally take" and thus the defendants should be deemed to have waived their right to arbitration.[100] Before the Intervenors' moved to intervene in *State Roe*, the defendants filed only a motion to compel arbitration. In response to the Intervenors' subsequent

---

[99] To the contrary, another court in this district recently issued a decision (after the court's August 2018 arbitration order) similarly holding that a defendant does not waive its right to arbitrate against one plaintiff by settling an overlapping class action. *Turng v. Guaranteed Rate, Inc.*, ___ F. Supp. 3d ___, No. 18-cv-02642-EMC, 2019 WL 1387717, at *4–5 (N.D. Cal. Jan. 17, 2019) (rejecting argument that "Defendant has waived its right to arbitrate because in a separate case, a class action overlapping with the present matter in which Plaintiff is also a class member, Defendant has moved to settle the class action rather than seek arbitration") (citing *Bischoff*, 180 F. Supp. 2d at 1113 and other cases).

[100] *Hughes* Pls. Reply in Supp. of Mot. for Recons. – No. 3:16-cv-03371-LB, ECF No. 165 at 4.

motion to intervene in *State Roe*, the defendants opposed only the intervention motion and responded to the Intervenors' opposition to the settlement. These are not actions that are inconsistent with an intent to arbitrate against the Intervenors and do not constitute waiver of the right to arbitrate. *Cf. Carbajal I*, 2003 WL 22159473, at *11 (a defendant's filing an opposition to a plaintiff's motion to intervene in another class action is not a waiver of a right to arbitrate with respect to that plaintiff); *Carbajal II*, 372 F.3d at 905 (same).[101]

The plaintiffs also argue that the defendants waived arbitration because they refused to pay the arbitration fee.[102] This argument fails. Five of the six Round 1 Plaintiffs — Angelynn Hermes, Penny Nunez, Elana Pera, Sarah Murphy, and Dora Marchand — never initiated arbitration proceedings, and thus there were no fees. The sixth Round 1 Plaintiff — Nicole Hughes — submitted only her unlawful-retaliation claim to arbitration, despite the court's order to submit all non-PAGA claims to arbitration. The delay in the payment of the arbitration fee resulted from the defendants' attempt to include the remaining non-PAGA claims in arbitration. This is not inconsistent with an intent to arbitrate.

The court denies the plaintiffs' motion for reconsideration.

## 2. The Round 2 Plaintiffs Must Submit Their Claims (Other Than Ms. Tejada's Post-January 2017 Claims) Against S.A.W. Entertainment and Gold Club to Arbitration

### 2.1 The Court Grants the Motion to Compel Poohrawn Mehraban, Gypsy Vidal, and Tiffany Zoumer to Submit Their Claims to Arbitration

Poohrawn Mehraban, Gypsy Vidal, and Tiffany Zoumer all signed "performer contracts" with S.A.W. Entertainment, and Ms. Mehraban signed a "performer contract" with Gold Club.[103] In the

---

[101] The court's holding — that the defendants did not waive their right to arbitrate with respect to the plaintiffs — applies with particular force to the Round 1 Plaintiffs, who were subject to the court's August 2018 arbitration order. The additional steps that the defendants took in *State Roe* to oppose the Round 1 Plaintiffs' intervention were necessary only because the Round 1 Plaintiffs did not comply with this court's order to submit their claims to arbitration and instead moved to intervene in *State Roe*, thereby litigating anew in a different forum.

[102] *Hughes* Pls. Mem. of Law in Supp. of Mot. for Recons. – No. 3:16-cv-03371-LB, ECF No. 161-1 at 13–15; *Hughes* Pls. Reply in Supp. of Mot. for Recons. – No. 3:16-cv-03371-LB, ECF No. 165 at 5.

[103] Mehraban/Gold Club Performer Contracts – No. 3:16-cv-003371-LB, ECF No. 87-2 at 21–29; Mehraban/S.A.W. Entm't Performer Contracts – No. 3:16-cv-003371-LB, ECF No. 87-4 at 27–35;

contracts, the parties agreed to resolve all disputes through arbitration.[104] The plaintiffs oppose arbitration with respect to S.A.W. Entertainment and Gold Club on the grounds that (1) the defendants waived their rights to arbitration through their representations and conduct in *Hughes*, *Pera*, and *State Roe*, (2) this court is bound by the Superior Court's decision in *State Roe* holding that the defendants have waived their rights to arbitration, (3) the defendants waived their rights to arbitration by refusing to pay arbitration fees for Ms. Mehraban's unlawful-retaliation claim, and (4) the arbitration agreements are unconscionable and unenforceable.[105]

The court previously rejected the plaintiffs' argument that the defendants waived arbitration by their conduct in *Hughes* and *Pera* and that the arbitration agreements are unconscionable. *Hughes II*, 2017 WL 6450485, at *2 & n.7 (defendants' representations and conduct in *Hughes* and *Pera* did not waive right to arbitration) (citing *Hughes I*, 2017 WL 6450845, at *4–6); *id.* at *2–5 (arbitration provisions were not unenforceable as unconscionable). That holding applies here.[106] As discussed earlier in this order, the defendants did not waive arbitration by their conduct in *State Roe* or in positions about payment of arbitration fees.

---

Vidal/S.A.W. Entm't Performer Contracts – No. 3:17-cv-00138-LB, ECF No. 28-2 at 49–52; Zoumer/ S.A.W. Entm't Performer Contracts – No. 3:17-cv-00138-LB, ECF No. 28-2 at 35–47.

[104] Mehraban/Gold Club Performer Contracts – No. 3:16-cv-003371-LB, ECF No. 87-2 at 24, 28–29; Mehraban/S.A.W. Entm't Performer Contracts – No. 3:16-cv-03371-LB, ECF No. 87-4 at 28, 31, 35; Vidal/S.A.W. Entm't Performer Contracts – No. 3:17-cv-00138-LB, ECF No. 28-2 at 52; Zoumer/ S.A.W. Entm't Performer Contracts – No. 3:17-cv-00138-LB, ECF No. 28-2 at 38, 42, 46–47.

[105] *Hughes* Pls. Opp'n to Mot. to Compel Arb. re Mehraban – No. 3:16-cv-03371-LB, ECF No. 157; *Pera* Pls. Opp'n to Mot. to Compel Arb. re Vidal and Zoumer – No. 3:17-cv-00138-LB, ECF No. 63.

[106] While the court's conclusion that the Round 1 Plaintiffs' arbitration provisions are not unconscionable does not automatically mean that the Round 2 Plaintiffs' arbitration provisions are not unconscionable, the plaintiffs have not offered any arguments distinguishing the Round 2 Plaintiffs' arbitration provisions from the Round 1 Plaintiffs' provisions. *Cf. Hughes* Pls. Opp'n to Mot. to Compel Arb. re Mehraban – No. 3:16-cv-03371-LB, ECF No. 157 at 2 & n.1 (acknowledging that plaintiffs are not trying to distinguish Mehraban's unconscionability arguments from the Round 1 Plaintiffs' arguments); *Pera* Pls. Opp'n to Mot. to Compel Arb. re Vidal and Zoumer – No. 3:17-cv-00138-LB, ECF No. 63 at 8 & n.4 (same re Vidal and Zoumer). The defendants have committed to paying all arbitration fees and forgoing all claims against the plaintiffs for costs and fees, and the plaintiffs offer no new reasons why the Round 2 Plaintiffs' arbitration provisions are unconscionable. *Cf. Poublon*, 846 F.3d at 1260 (party opposing arbitration has the burden of proving unconscionability) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

The court grants the defendants' motions to compel Mses. Mehraban, Vidal, and Zoumer to submit their claims against S.A.W. Entertainment and Gold Club to arbitration.

### 2.2 The Court Grants the Motion to Compel Diana Tejada to Submit Her Claims Arising Before or During January 2017 to Arbitration But Denies the Motion to Compel Her to Submit Her Claims Arising After January 2017 to Arbitration

The analysis is somewhat different with respect to Diana Tejada. Until January 2017, Ms. Tejada signed annual "performer contracts" with S.A.W. Entertainment that provided that the parties would resolve all disputes through arbitration.[107] The last of these performer contracts terminated on January 31, 2017.[108]

In January 2017, Ms. Tejada and S.A.W. Entertainment entered into a new performer contract. The contract stated:

> **VIII. Arbitration <u>OPTION</u>**
>
> Congress created Arbitration so that contracting parties could quickly and inexpensively resolve their disputes without the formality of a Court process. Owner [S.A.W. Entertainment], its officers, employees, agents and its related entities agree to resolve any disputes with you by Binding Arbitration. HOWEVER, YOU must AGREE to Arbitration. Read this section carefully and choose your preferred method of resolving any possible future disputes.
>
> **1. *IF YOU AGREE TO ARBITRATION*, ALL DISPUTES BETWEEN THE PARTIES AND THEIR AGENTS, WHETHER STATUTORY, CONTRACTUAL OR TORT, WILL BE DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT, AND SHALL BE BEFORE A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES.**
>
> **2. *IF YOU AGREE TO ARBITRATION*, <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.</u>**

---

[107] Tejada/S.A.W. Entm't Performer Contracts – No. 3:16-cv-03371-LB, ECF No. 125-1 at 7–20. The defendants did not attach Ms. Tejada's 2013 contract to their motion, but neither side raised this as an issue or argued that Ms. Tejada's claims from 2013 are not subject to arbitration, particularly in light of Ms. Tejada's 2014, 2015, and 2016 contracts, which provide that "[a]ll disputes between the parties . . . shall be decided by binding arbitration," without any temporal limitation. *Cf. Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) ("Where an arbitration provision does not contain a temporal limitation, the parties may be compelled to arbitrate despite the fact that the challenged conduct predates the signing of the agreement.") (citing cases).

[108] Tejada/S.A.W. Entm't 2016 Performer Contract – No. 3:16-cv-03371-LB, ECF No. 125-1 at 17 ("<u>TERM:</u> This Contract begins on signing and ends JANUARY 31, 2017, or when terminated as provided herein.").

. . . .

**YOUR CHOICE ON ARBITRATION DOES NOT AFFECT YOUR PERFORMANCE DATES, PAYMENTS, OR CONTROL OVER YOUR PERFORMANCES. WHETHER DISPUTES ARE TO BE RESOLVED BY BINDING ARBITRATION IS YOUR SOLE CHOICE TO MAKE.**

**CHOOSE ONE CAREFULLY! INITIAL ONE BOX!**

**____ I <u>AGREE</u> TO RESOLVE MY DISPUTES BY BINDING ARBITRATION.**

**____ I <u>REJECT</u> HAVING MY DISPUTES RESOLVED BY BINDING ARBITRATION**

**6. <u>WAIVER OF CLASS AND COLLECTIVE PROCEEDINGS</u>. BOTH PARTIES AGREE THAT ANY CLAIM MADE AGAINST THE OTHER SHALL BE IN AN INDIVIDUAL CAPACITY. THIS MEANS YOU AGREE THAT CLAIMS WILL NOT BE MADE AS A CLASS, REPRESENTATIVE OR CONSOLIDATED ACTION.**

**____ I AGREE TO BRING ANY CLAIMS IN AN INDIVIDUAL CAPACITY.**

**____ I REJECT LIMITING MY CLAIMS TO INDIVIDUAL CLAIMS.**[109]

Both S.A.W. Entertainment and Ms. Tejada signed the overall contract.[110] Ms. Tejada did not initial or mark any of the boxes relating to arbitration or class- or collective-action waiver.[111]

The parties offer competing arguments about how Ms. Tejada's performer contracts and arbitration provisions should be construed, both with respect to claims arising before the termination of her pre-2017 performer contracts (i.e., January 31, 2017) and claims arising after.

### 2.2.1    Claims arising on or before January 31, 2017

Ms. Tejada's claims arising on or before January 31, 2017 are subject to her pre-2017 performer contracts, which contain arbitration provisions, and thus are subject to arbitration for the same reasons as the other plaintiffs' claims.

Contrary to Ms. Tejada's arguments, the arbitration provisions in her pre-2017 performer contracts survive those contracts' termination dates and continue to apply to any claims that arose

---

[109] Tejada/S.A.W. Entm't 2017 Performer Contract – No. 3:16-cv-03371-LB – No. 125-1 at 23 (emphasis in original).
[110] *Id.*
[111] *Id.*

under those contracts, i.e., claims that arose on or before January 31, 2017. *Cf. Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1140 (N.D. Cal. 2003) ("[P]arties' duties under an arbitration clause survive contract termination when the dispute is over an obligation arguably created by the expired contract.") (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 554–55 (1964)). Ms. Tejada argues that her 2017 performer contract supersedes her prior performer contracts, but this argument is unavailing. "'[W]here the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.'" *Id.* (quoting *Nolde Bros., Inc. v. Local. No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 255 (1977)). Ms. Tejada's 2017 performer contract does not expressly or by clear implication negate any of her prior performer contracts' arbitration provisions.[112]

The court grants the defendants' motions to compel Ms. Tejada to submit her Pre-January-2017 Claims to arbitration.

### 2.2.2     Claims arising after January 31, 2017

The defendants have not identified a contract in which Ms. Tejada agreed to arbitrate claims arising after January 31, 2017.

"'Arbitration is a matter of contract,' and there is 'a liberal federal policy favoring arbitration agreements.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014) (quoting *Rent-a-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). But "[courts] do not apply the so called 'presumption in favor of arbitrability' in every case." *Id.* at 742. "Where the arbitrability of a

---

[112] The plaintiffs cite *DeMasse v. ITT Corp.*, 111 F.3d 730 (9th Cir. 1997), for the purported precept that successive versions of an employer's personnel policy modify and supersede prior versions, and argue that the arbitration provisions in Ms. Tejada's pre-2017 performer contracts were superseded by her 2017 contract. *DeMasse* is inapposite. That case involved Arizona (not California) law and did not involve arbitration. In addition, it addressed whether earlier versions or later versions of an employee's personnel policy applied going forward to employee layoffs that occurred after the latest version was issued. *Id.* at 730–31 (addressing whether latest policy, which became effective April 19, 1993, applied to layoffs that occurred between April 29, 1993 and January 10, 1994). The case thus has no bearing on whether Ms. Tejada's 2017 performer contract retroactively negates her agreement to arbitrate with respect to claims arising on or before January 31, 2017.

dispute is contested, [courts] must decide whether the parties are contesting the *existence* or the *scope* of an arbitration agreement." *Id.* (emphasis in original). "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Id.* (emphasis in original). "The presumption in favor of arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand, and [courts] adhere to the presumption and order arbitration only where the presumption is not rebutted." *Id.* (emphasis in original) (citing cases). Where a party contests the existence of an arbitration agreement, "[courts] use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists." *Id.* at 743 (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)).

Under California law, "[t]he terms of an offer must be 'met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract[.]'" *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998) (quoting *Panagotacos v. Bank of Am.*, 60 Cal. App. 4th 851, 856 (1998)). This precept applies to arbitration provisions within contracts. *See id.* The California Court of Appeal's decision in *Marcus & Millichap* is illustrative. That case centered on a real-estate contract that contained an arbitration provision that stated that the buyer, the seller, and the real-estate agent (representing both the buyer and the seller) agreed to submit all controversies regarding the sale to arbitration. *Id.* at 86. The arbitration provision was accompanied with a notice that required the parties to sign their initials next to the arbitration provision to agree to it. *Id.* The buyers initialed the provision, but the sellers did not. *Id.* After a dispute arose, the real-estate agent moved to compel arbitration. *Id.* Both the buyers and the sellers (except two sellers, who had cross-claims filed against them by the other sellers) opposed arbitration on the ground that the sellers had not agreed to the arbitration provision. *Id.* at 86–87. The court held that by not initialing the arbitration provision, the sellers had not "met exactly, precisely and unequivocally" the offer to arbitrate with an acceptance, and thus no contractual agreement to arbitrate between the parties existed. *Id.* at 89, 91 ("Since the sellers did not assent to this provision[,] the parties did not agree to binding arbitration.").

The Court of Appeal's analysis in *Marcus & Millichap* applies here. Ms. Tejada's 2017 performer contract expressly offered arbitration as an "**OPTION**" and informed her that "YOU must AGREE to Arbitration" for the option to apply and that "WHETHER DISPUTES ARE TO BE RESOLVED BY BINDING ARBITRATION IS YOUR SOLE CHOICE TO MAKE."[113] Ms. Tejada did not select this arbitration option. Thus, the 2017 performer contract does not contain an agreement to arbitrate, and the defendants thus cannot compel Ms. Tejada to arbitrate her Post-January-2017 Claims. *Cf. Marcus & Millichap*, 68 Cal. App. 4th at 91.

The defendants argue that Ms. Tejada's failure to sign either the boxes accepting or rejecting arbitration was mere silence, and that silence should not be construed as a rejection. It is true that Ms. Tejada did not sign the box rejecting arbitration either. But as the parties seeking to compel arbitration, it is the defendants' burden to prove the existence of an agreement between the parties to arbitrate in the first instance. *Norcia v. Samsung Telecommc'ns Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Ms. Tejada's unchecked 2017 performer contract is not an agreement to arbitrate, and the defendants identify no other agreement to arbitrate that covers claims Ms. Tejada's Post-January-2017 Claims.

The defendants argue that by signing the 2017 performer contract, Ms. Tejada agreed to all its terms, including its arbitration provision. This argument fails for at least two reasons. First, where an employer's contract calls for a separate signature agreeing to an arbitration provision in addition to a signature for the contract as a whole, the arbitration provision is severable, and the employee's signing the contract as a whole does not evince an agreement to arbitrate if the employee did not separately sign the arbitration provision. *Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1157, 1159 (2001) (rejecting employer's argument that employee's signature at the end of employee handbook "bound her to 'all matters included within the employee handbook,'" including the handbook's arbitration provision, where the handbook called for a separate signature next to the arbitration provision, and the employee did not provide that separate signature). The

---

[113] Tejada/S.A.W. Entm't 2017 Performer Contract – No. 3:16-cv-03371-LB – No. 125-1 at 23 (emphasis in original).

2017 performer contract called for Ms. Tejada to separately sign her initials if she agreed to arbitrate. Her signature at the end of the contract as a whole does not evince an agreement to arbitrate in the absence of her separately signed initials next to the arbitration provision. Second, even if Ms. Tejada's signature at the end of the could be construed as accepting all provisions in the contract, the provisions do not say the parties will arbitrate all disputes — they say, "*IF YOU AGREE TO ARBITRATION*," the parties will arbitrate all disputes.[114] The terms of the 2017 performer contract, even if Ms. Tejada accepted them in their entirety, do not provide for the defendants' compelling Ms. Tejada to arbitrate absent her agreement.

The defendants also argue that Ms. Tejada's performer contracts from 2011 to 2016, which contained arbitration provisions, evince a "course of dealing" and that an agreement to arbitrate in the 2017 performer contract can be inferred from that course of dealing. The 2017 performer contract is not a continuation of a course of dealing. Instead, it represents an affirmative break from the parties' prior dealings. In contrast to the 2014, 2015, and 2016 performer contracts, where the arbitration provision was a set term of the contract, the 2017 contract gave Ms. Tejada an option of accepting or rejecting the arbitration provision and called for her to separately sign her initials if she wanted to arbitrate. Where, as here, the contract "did not purport unilaterally to impose an arbitration agreement on its employees[, and] instead, it urged employees to agree to submit to arbitration," Ms. Tejada's election not to initial the arbitration agreement evinces an intent not to be bound by it. *Cf. Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1511 (2012).

Finally, the defendants contend that the arbitration provisions in Ms. Tejada's 2011 to 2016 performer contracts extend to cover claims arising after her 2016 performer contract expired. The defendants argue that if an arbitration provision "fixes no temporal boundaries to its application to such disputes," then it is "all-encompassing."[115] But Ms. Tejada's pre-2017 performer contracts do

---

[114] Tejada/S.A.W. Entm't 2017 Performer Contract – No. 3:16-cv-03371-LB – No. 125-1 at 21, 23 (emphasis in original).

[115] *Hughes* Defs. Mem. of Law in Supp. of Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 139-1 at 12.

fix temporal boundaries: each one has a set termination date.[116] While the defendants are correct that Ms. Tejada's Pre-January-2017 Claims remain subject to the arbitration provisions in her pre-2017 performer contracts, the defendants cite no authorities for the proposition that claims arising only after those contracts terminate are subject to those contracts' arbitration provisions. *Cf. Bueche v. Fidelity Nat'l Mgmt. Servs., LLC*, No. 2:12-CV-1114-JAM-EFB, 2013 WL 3283508, at *4 (E.D. Cal. June 27, 2013) (if "[plaintiff's] claims are limited to the time period after the contract expired . . . . [then they] therefore do not arise from the expired contract and its arbitration agreement does not apply to her claims"); *Just Film, Inc. v. Merchant Servs., Inc.*, No. C 10-1993 CW, 2011 WL 2433044, at *5 (N.D. Cal. June 13, 2011) (generally same).[117]

The court denies the defendants' motions to compel Ms. Tejada to submit her Post-January-2017 Claims to arbitration.

### 3. The Plaintiffs Must Submit Their Claims (Other Than PAGA Claims and Ms. Tejada's Post-January 2017 Claims) Against SFBSC Management to Arbitration

SFBSC Management is not a signatory to the plaintiffs' performer contracts or arbitration provisions. The defendants nonetheless contend that SFBSC Management has standing to enforce the arbitration provisions (1) under the doctrine of equitable estoppel and (2) as S.A.W. Entertainment's and Gold Club's agent.[118] The court holds that SFBSC Management may enforce

---

[116] Tejada/S.A.W. Entm't Performer Contracts – No. 3:16-cv-03371-LB, ECF No. 125-1 at 7, 9, 11, 14, 17.

[117] The defendants cite cases extending arbitration provisions to claims arising before the contract containing the arbitration provision was signed. *See Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 652 (6th Cir. 2008) (addressing whether arbitration provision applied retroactively to conduct before contract was signed); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1223–24 (N.D. Cal. 2007) (same); *Spinello v. Amblin Entm't*, 29 Cal. App. 4th 1390, 1398 (1994) (same) (all cited by *Hughes* Defs. Mem. of Law in Supp. of Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 139-1 at 13). They do not cite any cases extending an arbitration provision to claims arising after the contract terminates. "Although there is a general presumption in favor of arbitrability, it does not apply 'wholesale in the context of an expired agreement, for to do so would make limitless the contractual obligation to arbitrate.'" *Just Film*, 2011 WL 2433044, at *5 (internal ellipsis omitted) (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991)).

[118] *Hughes* Defs. Mem. of Law in Supp. of Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF 139-1 at 14–19.

the arbitration provisions under the doctrine of equitable estoppel (and does not reach the issue of agency).[119]

### 3.1 Governing Law

"'The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the [Federal Arbitration Act] if the relevant state contract law allows the litigant to enforce the agreement.'" *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)). Under California law, the doctrine of equitable estoppel may allow a nonsignatory to an arbitration agreement to nonetheless enforce the agreement under two circumstances.

First, a nonsignatory may invoke equitable estoppel "'when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract[.]'" *Id.* (quoting *Kramer*, 705 F.3d at 1128). "'This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.'" *Id.* at 1230 (quoting *Goldman*, 173 Cal. App. 4th 209, 221 (2009)).

Second, a nonsignatory may invoke equitable estoppel "'when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'" *Id.* at 1229 (quoting *Goldman*, 173 Cal. App. 4th at 219–20). Under this second prong, "the doctrine of equitable estoppel may apply in certain cases

---

[119] In *Federal Roe*, the Ninth Circuit rejected SFBSC Management's arguments that it could enforce the *Federal Roe* plaintiffs' arbitration provisions under an agency theory. *Federal Roe IV*, 656 F. App'x at 829–31. SFBSC Management expressly disclaimed making any estoppel argument, and the Ninth Circuit therefore did not address that issue. *Id.* at 830 n.3. The Ninth Circuit's *Federal Roe* decision thus does not foreclose SFBSC Management from raising an equitable-estoppel argument here. *Cf. Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (for a prior federal decision to collaterally estop litigant, the issue at stake must "identical" to the one in the prior litigation, must have been "actually litigated," and must have been "a critical and necessary part of the judgment").

where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for 'claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants.'" *Id.* at 1231 (quoting *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003)). "'Mere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough to compel arbitration between parties who have not agreed to arbitrate: those allegations of collusive behavior must also establish that the plaintiff's claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause.'" *Id.* (internal brackets omitted) (quoting *Goldman*, 173 Cal. App. 4th at 223). "'It is the relationship of the *claims*, not merely the collusive behavior of the signatory and nonsignatory parties, that is key.'" *Id.* (emphasis in original) (quoting *Goldman*, 173 Cal. App. 4th at 223).

The California Court of Appeal recently held in *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782 (2017), that when a plaintiff brought the same wage-and-hour claims against a direct employer that signed an arbitration agreement and an ancillary employer that did not, the ancillary employer could invoke equitable estoppel to compel arbitration. The plaintiff in that case was hired by a temporary-staffing agency, Real Time Staffing Services, LLC, and signed an arbitration agreement with Real Time. *Id.* at 784. Real Time assigned the plaintiff to work for another company, Pexco, LLC (one of Real Time's clients). *Id.* The plaintiff did not sign an arbitration agreement with Pexco, and Pexco was not a signatory to the original arbitration agreement with Real Time. *Id.* The plaintiff later sued both Real Time and Pexco for violations of the California Labor Code and unfair business practices relating to payment of his wages. *Id.* at 785. Real Time and Pexco moved to compel the plaintiff to submit his claims to arbitration. *Id.* The plaintiff did not challenge Real Time's arbitration demand but did challenge Pexco's, arguing that Pexco was not a signatory to the arbitration agreement and thus could not enforce it.

The Court of Appeal rejected the plaintiff's argument and ordered him to submit his claims against Pexco to arbitration. It held that the plaintiff's claims against Pexco were "intimately founded in and intertwined with his employment relationship with Real Time, which is governed by the employment agreement compelling arbitration." *Id.* at 787. The plaintiff argued that he was

"not seeking to enforce the terms and conditions of his employment contract containing the arbitration clause" and thus should not be estopped by the contract. *Id.* at 786. He argued that he "rather only asserts causes of action based on the Labor Code" and that the contract should not estop him with respect to "claims [that] are based upon statutory violations, do not sound in contract, and cannot be deemed part of the arbitration agreement." *Id.* The court rejected this argument, holding that "a claim 'arising out of' a contract does not itself need to be contractual," that "[e]ven though [the plaintiff]'s claims are styled as Labor Code violations, the arbitration agreement applies," and that "[b]ecause the arbitration agreement controls [the plaintiff]'s employment, he is equitably estopped from refusing to arbitrate his claims with Pexco." *Id.* at 786, 788 (citing cases).

The court noted that "[the plaintiff]'s claims against Pexco are rooted in his employment relationship with Real Time" and that "[the plaintiff] does not distinguish between Real Time and Pexco in any way. All of [the plaintiff]'s claims are based on the same facts alleged against Real Time." *Id.* at 787–88. The court held that "[the plaintiff] cannot attempt to link Pexco to Real Time to hold it liable for alleged wage and hour claims, while at the same time arguing the arbitration provision only applies to Real Time and not Pexco." *Id.* at 788. The court explained that "[o]n these facts, it is inequitable for the arbitration about [the plaintiff]'s assignment to Pexco to proceed with Real Time, while preventing Pexco from participating." *Id.* at 787.

### 3.2    Application

The reasoning in *Garcia* controls here. The plaintiffs' claims against SFBSC Management are founded in and intertwined with their relationships with S.A.W. Entertainment and Gold Club. The plaintiffs do not distinguish between SFBSC Management, on the one hand, and S.A.W. Entertainment or Gold Club, on the other. All claims against SFBSC Management are based on the same facts alleged against S.A.W. Entertainment or Gold Club.[120] As discussed earlier in this

---

[120] Apart from their allegations against "Defendants" generally, the plaintiffs' allegations against SFBSC Management are only, "Defendant SFBSC Management, LLC is a business organized under the laws of Nevada and registered to do business in California, and it maintains management authority and control over the operations of Hustler Club and Gold Club," and "Defendant SFBSC Management,

order, the plaintiffs must submit their claims against S.A.W. Entertainment and Gold Club to arbitration. It would be inequitable to prevent SFBSC from participating in that arbitration process and to allow the plaintiffs instead to bring in litigation identical claims based on identical facts against SFBSC. *Cf. Garcia*, 11 Cal. App. 5th at 786–88.

The plaintiffs argue that *Garcia* is an "outlier" case and should not be followed.[121] This does not appear to be an accurate statement. *Garcia* has been followed by other courts. *See Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 6177225, at *7 (C.D. Cal. Aug. 20, 2018) (holding that nonsignatory employer could enforce arbitration agreement that plaintiff signed with staffing agency); *Ortiz v. Volt Management Corp.*, No. 16-cv-07096-YGR, 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017) (same); *see also, e.g.*, *Vasquez v. San Miguel Produce, Inc.*, No. B287696, 2019 WL 1771021, at *4–5 (Cal. Ct. App. Apr. 23, 2019) (same); *Wheeler v. MedImpact Holdings, Inc.*, No. D073514, 2019 WL 1783577, at *9 (Cal. Ct. App. Apr. 24, 2019) (holding that nonsignatory CEO and nonsignatory parent company could enforce arbitration agreement that plaintiff signed with employer).[122]

The plaintiffs cite *Shoals v. Owens & Minor Distribution, Inc.*, No. 2:18-cv-2355 WBS EFB, 2018 WL 5761764 (E.D. Cal. Oct. 31, 2018), a case that expressed skepticism about *Garcia*. *Id.* at *8. *Shoals* is inapposite here. In that case, a plaintiff signed an employment agreement that contained an arbitration provision with a staffing agency, Staffmark Investment, LLC. *Id.* at *1. Staffmark assigned the plaintiff to work as a truck driver for an employer, Owens & Minor Distribution, Inc., that was not a signatory to the arbitration provision. *Id.* The plaintiff's supervisor at Owens & Minor allegedly subjected him to racial comments, and Owens & Minor allegedly retaliated against him by subjecting him to continued discrimination and harassment

---

LLC is a [sic] maintains management authority and control over the operations of Hustler Club and Gold Club." *Hughes* TAC – No. 3:16-cv-03371-LB, ECF No. 133 at 3 (¶ 9), 4 (¶ 16).

[121] *Hughes* Pls. Opp'n to Mot. to Compel Arb. – No. 3:16-cv-03371-LB, ECF No. 141 at 16.

[122] "Although unpublished California cases have no precedential value, they may be considered 'as a possible reflection of California law.'" *Valencia v. Volkswagen Grp. of Am. Inc.*, 119 F. Supp. 3d 1130, 1140 n.2 (N.D. Cal. 2015) (quoting *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n. 6 (9th Cir. 2011)).

leading to his constructive termination. *Id.* After the plaintiff was terminated, Staffmark allegedly retaliated against him by failing to give him work with other companies. *Id.* The plaintiff sued Owens & Minor, the Owens & Minor supervisor, and Staffmark for racial discrimination, retaliation, and related claims. *Id.* at *2. The defendants moved to compel arbitration. *Id.* The court granted Staffmark's motion to compel arbitration but denied Owens & Minor's and the supervisor's. *Id.* at *11. In rejecting Owens & Minor's equitable-estoppel arguments, the court distinguished *Garcia* by noting that, "[u]nlike in *Garcia*, however, plaintiff relies on different facts for different defendants." *Id.* at *9. "Against Owens & Minor, plaintiff contends that it discriminated and retaliated against him by refusing to hire him based on his race and by failing to investigate his complaints of racial discrimination," whereas "plaintiff alleges that Staffmark Investment discriminated and retaliated against him by failing to give him other work after he refused to work at Owens & Minor." *Id.* "Even though plaintiff alleges the same causes of action against Owens & Minor as he does against Staffmark Investment, plaintiff has a distinct factual basis for each claim as to each defendant." *Id.*

As the Ninth Circuit wrote (quoting the California Court of Appeal), the "relationship of the *claims*" is "key" in determining whether equitable estoppel applies. *Murphy*, 724 F.3d at 1231 (emphasis in original) (quoting *Goldman*, 173 Cal. App. 4th at 223). Unlike the plaintiff in *Shoals*, the plaintiffs here do not have factual bases for their claims against SFBSC Management that are distinct from the bases for their claims against S.A.W. Entertainment and Gold Club. This case thus is less a situation analogous to *Shoals* and more a situation "where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for 'claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants.'" *Cf. id.* (quoting *Metalclad*, 109 Cal. App. 4th at 1713); *accord Garcia*, 11 Cal. App. 5th at 786–88. In the latter case, equitable estoppel applies.[123]

---

[123] The plaintiffs' reliance on *Henson v. U.S. District Court (In re Henson)*, 869 F.3d 1052 (9th Cir. 2017), and *Murphy*, 724 F.3d 1218, is misplaced for the same reason that their reliance on *Shoals* is misplaced. Neither case involved employment or labor disputes, and in both cases, the plaintiffs' claims against the defendants that did not sign arbitration agreements were distinct from, and not intertwined with, the plaintiffs' claims (if any) against the signatories to the agreements. *See Henson*,

The plaintiffs' claims against SFBSC Management are identical to their claims against S.A.W. Entertainment and Gold Club. Thus, SFBSC Management may, under the doctrine of equitable estoppel, enforce the arbitration provisions in the performer contracts that the plaintiffs signed with S.A.W. Entertainment and Gold Club. The court grants the defendants' motions to compel the plaintiffs to submit their claims (other than Ms. Tejada's Post-January-2017 Claims) against SFBSC Management to arbitration.[124]

### 4. The Court Stays the PAGA Claims Pending the Outcome of Arbitration

The court stays each plaintiff's PAGA claims (if any) while that plaintiff's arbitration is pending. *Cf. Aviles v. Quik Pick Express, LLC*, 703 F. App'x 631, 632 (9th Cir. 2017) ("[T]he district court should stay [plaintiff]'s PAGA claims during the pendency of the arbitration."). The court declines to address the defendants' motion to dismiss the PAGA claims, as time-barred under the statute of limitations or for deficient notice, while the stay is pending. *Cf. Nguyen v. Impac Mortg.*, No. SA CV 17-0723-DOC (KESx), 2018 WL 5880825, at *11 (C.D. Cal. Aug. 23, 2018) (refusing to grant defendants exception to stay pending arbitration to move to dismiss PAGA claims under the statute of limitations "because the purpose[] of the stay is to promote judicial economy") (citing *Shepardson v. Adecco USA, Inc.*, No. 15-CV-05102-EMC, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016)).

---

869 F.3d at 1056–57, 1061–62 (plaintiffs entered into arbitration agreements with cellphone-provider Verizon and sued a company that allegedly was putting "zombie cookies" on Verizon cellphones to track them; Verizon was not a defendant, and was not alleged to have known about the "zombie cookies," and "publicly rebuked [the defendant]'s alleged practices upon discovering them"); *Murphy*, 724 F.3d at 1224, 1230–31 (plaintiffs entered into arbitration agreements with the satellite-television company DirecTV and sued DirecTV and the electronics-retailer Best Buy for fraudulent marketing; plaintiffs alleged that Best Buy made its own misrepresentations separate from those of DirecTV).

[124] Because the plaintiffs must submit their claims against SFBSC Management to arbitration, the court does not address whether any of the plaintiffs' claims against SFBSC Management are time-barred. *Cf. Hughes* Defs. Mot. to Dismiss – No. 3:16-cv-03371-LB, ECF No. 138. The arbitrator can address those arguments.

## CONCLUSION

The court grants the defendants' motion to enforce its August 2018 arbitration order against the Round 1 Plaintiffs (but denies the motion to hold them in contempt or impose sanctions). The court denies the plaintiffs' motion for reconsideration of the August 2018 arbitration order. The court grants all pending motions to compel arbitration except that it denies the motion to compel with respect to Ms. Tejada's Post-January-2017 Claims. In sum, the court orders Nicole Hughes, Angelynn Hermes, Penny Nunez, Diana Tejada, Poohrawn Mehraban, Dora Marchand, Elana Pera, Sarah Murphy, Gypsy Vidal, and Tiffany Zoumer to submit all claims other than PAGA claims and Ms. Tejada's Post-January-2017 Claims to binding arbitration.

The court stays each plaintiff's PAGA claim (if any) while that respective plaintiff's arbitration is pending.

The court administratively terminates the defendants' motion to dismiss without prejudice with respect to each plaintiff while that respective plaintiff's arbitration is pending. (The defendants may renew their motion to dismiss, when appropriate, by filing a one-page notice on the docket.)

As the parties and the court discussed at the hearing, the parties will brief (1) the next steps for Ms. Tejada's Post-January-2017 Claims, including whether they should be stayed pending the arbitration of her Pre-January-2017 Claims, and (2) whether the court should authorize issuance of an FLSA notice.

**IT IS SO ORDERED.**

Dated: May 9, 2019

_____
LAUREL BEELER
United States Magistrate Judge